By the Court. Woodruff, J.
The complaint in this action is founded upon' a promissory note made by the firm of Young & Ward, payable to the order of; and indorsed by the defendant; and, in making title to the note, the plaintiff avers no other indorsement, but professes to derive title directly from the plaintiff, and through his indorsement only; thus, he avers “that the said note *353 was by the said defendant, Greorge W. Hinchman, indorsed in blank and delivered to the plaintiff.”
The answer sets up as a defence, that the note was indorsed by the defendant without consideration for the accommodation of the makers, for a special purpose, and upon the express understanding that it should not be used unless the makers, (who were then embarrassed,) succeeded in procuring an extension of credit from all their creditors, in which event, the note was designed to be used as a security to the firm of Young, Bonnell & Sutphen, creditors of the makers; that although the note was left in the hands of one of the members of the firm of Young, Bonnell & Sutphen, they had knowledge of the condition upon which the defendants indorsed the note, and that the makers failed to procure the contemplated extension. That the plaintiff is not the lawful holder and owner of the note; that if any transfer has been made to him, such transfer was without consideration, and that the note is still the property of Young, Bonnell & Sutphen, for whose benefit this suit is prosecuted. Other matters are set up in the answer, but they are not material to this appeal.
On the trial, the plaintiff having read the note in evidence, and proved protest and notice to the defendant, it was shown on the part of the defendant, by the testimony of one of the makers of the note, that the note was indorsed by the defendant for the accommodation of the makers; that the makers were at the time engaged in an endeavor to procure an extension from their creditors ; that Young, Bonnell & Sutphen would not consent to such extension unless indorsed notes were given them; that the defendant’s indorsements upon this and other notes were for that reason procured; but the indorsements were given upon an agreement that the notes should not be used at all unless the extension was obtained, and the defendant was particular in requiring that the notes should not go out of the maker’s hands. Sutphen of the firm of Young, Bonnell & Sutphen, was informed of the transaction, and of the condition upon which the indorsement was given. Pending the negotiations with the creditors, the notes were delivered to Sutphen, but, although meetings of the creditors were had, the efforts of the makers to procure an extension failed; and the witness stated that “ the reason why he did not demand the notes after the extension fell through, was negligence.”
*354 To this evidence there was no contradiction. Indeed, upon this branch of the case no other witness was examined.
It is, therefore, obvious that Young, Bonnell & Sutphen had acquired no title to the notes as against the defendant. The note was indorsed by the defendant for a special purpose, indorsed without consideration, and was not to be used except in a contingency which never happened, and of all this, Young, Bonnell & Sutphen had notice before the note was placed in their hands. They could not recover thereon against the defendant.
The defendant, then, in order more fully to impeach the plaintiff’s title, read in evidence the deposition of the plaintiff himself, taken, due, bene esse, in this cause, in which he testified, that upon a certain occasion before the note became due, Mr. Young, (of the firm of Young, Bonnell & Sutphen,) being at dinner with the plaintiff at his house in Jersey City, proposed to him to purchase the note now in question, and that he (the plaintiff) “ told him if their names (Young, Bonnell & Sutphen) were on it, he would give $1000 for it.” That before he left he (Young) said that plaintiff could have it, and left the note with him; but at that time the names of Young, Bonnell & Sutphen were not on it.
If the transaction had terminated here, so far as the bargain was to be judged of, it is possible that a payment or tender of the $1000 would have entitled the plaintiff to retain the note, though not indorsed by Young, Bonnell & Sutphen, and, perhaps, he would have had. a right to demand the indorsement of that firm in fulfilment of the apparent agreement of Young, implied in the facts stated; and, perhaps, he might if he chose waive their indorsement, and insist upon retaining the note on paying the $10QO. But the parties did not stop here; within a day or two after the above conversation, Young, Bonnell & Sutphen sent for the note, and the plaintiff returned it to them-, and he testified that he never saw it afterwards, and he does not know who gave directions to sue it, and he has paid no costs of protest, nor lawyer’s fees.
Besides this, he testifies that at the time of the above conversation with Young, he had in the hands of Young, Bonnell & Sutphen over $1000, all of which he subsequently drew out, and that the account between them is, he thinks, closed.
It is true that he says he was told by “the bookkeeper,” “it *355 might have been three or four months after the conversation,” and of course long after the note became due,that Young, Bonnell & Sutphen had charged him with $1000; but he does not say that he ever assented to the charge, nor that the note with Young, Bonnell & Sutphen’s indorsement thereon was ever delivered to him or placed in any manner at his disposal, nor that he ever consented to buy it, or did buy it, without such indorsement. The extent of his further evidence on the subject is this: “ Mr. Young once asked me what he should do with it, and I told him to put it through.”
It is quite apparent, from this state of the proofs, that the title to this note never passed out of Young, Bonnell & Sutphen. At no moment have they been in a position to compel him to pay the $1000, and he has neither accepted any transfer of the note to himself nor had any actual possession or control of the note since he voluntarily returned it to them, and so far from having paid value therefor, he has withdrawn from their hands the money they held, and, as he understands it, closed his account with them.
It is not material to go further, or indulge in merely probable inferences;if it were, it would appear in no slight degree probable that Young, Bonnell & Sutphen never did indorse the note until after this suit was brought, and after the de lene esse examination of the plaintiff himself, when it appeared material that they should do so in order to exhibit an apparent performance of the understanding with Young, to which the plaintiff had testified, in which' defendant’s offer to give $1000 for the note was on the condition that they would indorse it. This probability is made very strong by the fact that the complaint sets out no such indorsement, but avers title in the plaintiff by direct indorsement to himself by the defendant. It is hardly probable that the plaintiff, having made it one of the conditions of his purchase that Young, Bonnell & Sutphen should indorse the note, would consent, when a suit became necessary, and his recovery was placed in- doubt, to strike out their indorsement on the trial. But it is needless to found any thing upon this possible or probable state of the case.
It is plain, upon the plaintiff’s own testimony, that he had no title to the note, nor any possession or control over it, unless the mere fact that Young, Bonnell & Sutphen had caused a suit to be *356 brought thereon in his name is sufficient to overcome the inferences from his own testimony.
But it is argued that the plaintiff, by his attorney, having produced the note on the trial, indorsed in blank, shows a legal title in himself, and the possession of the note on the trial not being shown, as between him and Young, Bonnell & Sutphen, to be mala fide, the defendant can suffer no prejudice, because a recovery by the plaintiff will operate as an effective bar to any other suit in whose name soever brought.
Two answers suggest themselves: First, the defendant has shown, without contradiction, a state of facts which make it unjust that he should pay, and under which he is not legally liable to pay this note to any one, except he be a Iona fide holder for value, Without notice of the conditions of his indorsement; the plaintiff is not such a holder. And, second, the Code requires that the suit shall be brought in the name of the real party in interest. The act of Young, Bonnell & Sutphen, in placing the note in the hands of an attorney, to be sued in his name, when he had no title to the note, and had parted with no value therefor, and when they had no right of action thereon, did not prima facie, at least, make him the real party in interest.
We have no hesitation in saying that, upon the proofs as given,, the suit was prima facie brought by Young, Bonnell & Sutphen, for their own benefit, and that the use of the plaintiff’s name (he being the brother-in-law of one of .them) was a mere artifice, by which they sought to compel the defendant to pay the note, which they had no right, either legal or equitable, to enforce.
Under such circumstances we are clear that a verdict for the plaintiff would have been against evidence, and that the Judge, therefore, committed no error in ordering the complaint to be dismissed, if no evidence offered by the plaintiff was improperly rejected, nor any was received from the defendant which was legally inadmissible.
Several exceptions were taken on the trial by the plaintiff’s counsel. Our attention was called to one only, either by the points of counsel or by his argument of the appeal. The others were not claimed to have been well taken, and have probably no foundation.
The plaintiff’s counsel did, however, suggest that the Judge *357 erred in not permitting Sutphen to testify on behalf of the nominal plaintiff, and he insists that if he had been permitted to testify he might have stated facts which the plaintiff either did not know or which he had omitted to state, which, if true, would show either that the plaintiff was a bona fide holder for value, or that the witness’s firm held the note under circumstances which would entitle them to recover, had the suit been in their name.
The witness was rejected, upon the ground that he was one of the parties for whose immediate benefit the suit was brought. It is apparent, then, that even if it be assumed that he could have testified to facts showing Young, Bonnell & Sutphen’s original right to enforce the note, that evidence would not obviate the objection. It still appeared prima fade established that the suit was brought for their benefit.
It was rather a bold offer, to show by Sutphen that the plaintiff was a bona fide holder for value, or the legal owner in any sense, in opposition to the testimony of the plaintiff under oath, or when the plaintiff was not himself aware of any facts constituting him such owner. But it is not, perhaps, for that reason to be condemned, unless it be true that when a plaintiff (examined as a witness by the adverse party) makes admissions which show he is not the real party in interest, he is concluded thereby.
But the ruling was, we think, right upon this ground: as the case stood, it was prima facie established that the suit was prosecuted for the immediate benefit of the witness and his copartners. In that state of the proofs, the court were to decide whether he was a competent witness. The decision of that question is, of course, always a question for the court, and none the less so because it involves the very question in issue, or upon which the jury are to pass. (Schapp v. Scadietzky, 1 Abbott, 366; Doe v. Davis, et al., 10 Ad. & El. N. S. 314.)
When a witness is called, the adverse party may either examine him preliminarily, or examine other witnesses to show that his interest is such as to render him incompetent; and if the fact be established, the court must reject him. If the proof be by other witnesses, the witness so called cannot be examined to contradict them, or prove his own competency. He is no more competent for this purpose than he is to testify to the merits of the cause.
The Code, in providing (§ 398) that no person shall be excluded *358 by reason of bis interest, adds expressly, (§ 399,) that this shall not apply to one for whose immediate benefit the suit is prosecuted.
The witness, when called, stood before the court¡prima fade, in the condition described in this exception, and was, therefore, prima fade incompetent. Had the plaintiff called other witnesses, and shown that the witness had no interest, or that the witness had assigned or released all his interest before suit was brought, he might then have been examined.
We think there was no error in rejecting him when offered.
The order appealed from must be affirmed, with costs.