SHELDON v. SHELDON.

(Supreme Court, Appellate Division, Second Department. October 20, 1911.)

1. DIVORCE (§ 27*)—SEPARATION—CRUEL AND INHUMAN TREATMENT.

Where defendant, a physician, not desiring children, by falsely representing to his wife that it was unsafe for her to bear children, induced her to submit to several operations producing miscarriages, such conduct amounted to cruel and inhuman treatment, entitling her to a separation.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 62–83; Dec. Dig. § 27.*]

2. WITNESSES (§ 190*)—CONFIDENTIAL COMMUNICATIONS—HUSBAND AND WIFE —PHYSICIAN AND PATIENT.

Code Civ. Proc. § 831, provides that husband or wife shall not be compelled, or without the consent of the other allowed, to disclose a confi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dcntial communication made from one to the other during marriage. *Held*, that such section related only to such communications as were induced by the marital relation, and did not include representations made by a physician to his wife concerning her ability to bear children and the necessity for an operation for abortion, which she, relying on his representations, permitted him to perform; such representations being communications between physician and patient, notwithstanding the marital relation of the parties.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 737; Dec. D·g, § 190.*]

Appeal from Special Term, Nassau County.

Action for separation by Violet E. Sheldon against Melvin Sheldon. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Jacob Rieger, for appellant.

Leander B. Faber and Charles H. Street, for respondent.

BURR, J. From a judgment for defendant in an action for separation on the ground of cruel and inhuman treatment, plaintiff appeals.

No evidence was offered by defendant. Upon that received the court might have found that at the time of her marriage plaintiff was 37 years old, in perfect health, and was able to give safe delivery to a normal child. During the 32 months that plaintiff resided and cohabited with defendant, her menstrual flow was interrupted and delayed nine times; the first time being about five weeks after her marriage. Defendant is a physician. On the first occasion he placed plaintiff on an operating table, dilated the mouth of the womb with instruments, and then inserted a rubber catheter. After allowing it to remain about 24 hours, he removed it, because of the pain caused by it; but in the evening of that day he inserted it again, and the next morning the overdue menstrual discharge began, forcing out the catheter with it. On the subsequent eight occasions referred to, the overdue menstruation followed the use of drugs administered by defendant, or operations performed by him similar to the one detailed. Each of the operations was attended with considerable pain, and after one of them plaintiff was confined to her bed for a period of three weeks, and to the house for about five weeks longer. On one occasion when the menstrual discharge had been delayed for several weeks, but had finally followed an operation, defendant examined the discharge and pronounced it a "growth" of four or five weeks. There was also evidence from three witnesses that defendant stated that he did not wish to have any children, that he and his wife were too old to have any children, and that they would only be an expense.

[1] If it is the fact that, induced by such sordid motives, defendant deprived plaintiff of the maternal joy so highly prized by every good woman, if in addition he induced her to submit to treatment intended to produce miscarriages, and which did produce them, with the ac-

companying pain and suffering, by false and fraudulent statements as to the necessity therefor, judgment should have gone for plaintiff in this case, and not for defendant. Defendant contends that there is no evidence that plaintiff ever became pregnant, or that the treatment administered by him was unnecessary, or without plaintiff's consent. Interruption of the menstrual flow might indicate pregnancy. That, taken in connection with the evidence of defendant's admission that on one occasion the resumption thereof was accompanied with the discharge of something which he, with his experience as a physician, pronounced a "growth" of four or five weeks, called upon him to satisfactorily establish that pregnancy had not taken place, or that the operations or the administering of drugs was justified by the circumstances of the case.

[2] Plaintiff sought to prove how she came to submit to defendant's treatment. She sought to prove statements by him to her on these various occasions, which, if accepted as true, would have warranted the court in finding that he induced her to believe that it was dangerous to her health and life to give birth to a child, that her physical condition and the condition of her womb were such that it was necessary to apply the treatment which he did, and that she only consented to such treatment because of the advice which he gave to her that it was physically dangerous for her to give birth to any child, upon which advice she relied because of his professional knowledge and skill. All conversations upon the subject, and all statements made by defendant to plaintiff relating thereto, were excluded, upon defendant's objection that they were confidential communications between husband and wife, and that plaintiff was incompetent to testify to the same. In so ruling the trial court erred. "A husband or wife shall not be compelled or without the consent of the other, if living, allowed to disclose a confidential communication made by one to the other during marriage." Code of Civil Procedure, § 831. But this statute does not exclude all communications between husband and wife which are not had in the presence of third persons. It relates only to such as are expressly made in confidence, or such as spring out of and are induced by the marital relation, and are therefore confidential in character. Parkhurst v. Berdell, 110 N. Y. 386, 18 N. E. 123, 6 Am. St. Rep. 384; Millspaugh v. Potter, 62 App. Div. 521, 71 N. Y. Supp. 134; Norris v. Lee, 136 App. Div. 685, 121 N. Y. Supp. 512.

A husband trusts in the affection and loyalty of his wife, and a wife in that of her husband. Induced thereby, one often confides to the other his or her inmost thoughts, revealing that which would ordinarily be concealed from every other person in the world. Such communications are confidential, because of the source from which they spring. It is difficult, if not impossible, to formulate a definition so comprehensive as to furnish a ready method of determining the character of every communication between husband and wife. But the communications here reviewed do not even approach the border line. The acts, alleged to be cruel, were the acts of the husband. The reasons given for the medical treatment, which involved such

acts, were reasons given by a physician to a patient. The sufficiency of these reasons may tend to show whether these particular acts were cruel or benign. But it was not the husband speaking to the wife, but the physician speaking to the patient. In accepting the reasons given for the treatment employed, she was relying upon the professional skill of the physician, not the love and affection of the husband. As a layman, simply as a husband, he would have been unable to give her the advice which she claims that he did. As a physician, if the circumstances warranted it, he might have given precisely the same advice to a woman not his wife. Confidential they probably were, but the marital relation had nothing to do with inspiring the confidence. The confidence was that between patient and physician only (Code of Civil Procedure, § 834), and that confidence plaintiff expressly waived, as she had a right to do (Code of Civil Procedure, § 836).

For error in excluding this testimony, the judgment must be reversed, with costs to the appellant, and a new trial granted. All concur.