Fuld, J.
Mr. and Mrs. Poppe, married in 1922, lived together until 1949. In that year, the husband left home and, six years later, Mrs. Poppe, alleging that her husband had abandoned her, brought this action for separation. The husband denied the allegations of the complaint and interposed an affirmative defense that his wife’s cruelty induced and justified his leaving her.
In the ensuing trial, held by the court without a jury, husband and wife were the only witnesses. Mrs. Poppe testified that her husband had abandoned her and had refused to support *314 her. He acknowledged leaving home, bnt offered evidence to establish that conduct on the part of his wife justified his action. Thus, in the course of his testimony, he stated, over objection, that in 1949 his wife had told him that she had had illicit relations “ a number of times ” with another man and that they “thought” that they “would elope and go away together.” Not long after this conversation, he went on to testify, his wife rented the room previously used as their bedroom, moved his own bed into the dining room and took up her quarters on the porch. It was immediately after this that he left to live elsewhere.
At the conclusion of the case, the court found that “ defendant was justified in living separate and apart from plaintiff” and dismissed the complaint. In a short opinion, the judge reaffirmed his belief as to the propriety of the husband’s testimony of what his wife had told him “ to prove cruel and inhuman treatment ”. The Appellate Division affirmed by a divided court and, on this appeal, the sole question presented involves the admissibility of that evidence.
Section 349 of the Civil Practice Act, entitled ‘ ‘ Testimony of husband and wife in action or proceeding ”, serves a twofold function; on the one hand, it stamps a husband or wife as “not competent” to testify in a case based on adultery and, on the other, it renders inadmissible “ a confidential communication ” made by one spouse to the other during marriage. Insofar as pertinent, it provides that ‘1 A husband or wife is not competent to testify against the other, upon the trial of an action * * * founded upon an allegation of adultery, except to prove the marriage or disprove the allegation of adultery. * * * A husband or wife shall not be compelled, or without the consent of the other if living, allowed to disclose a confidential communication made by one to the other during marriage.”
The action before us is obviously not “ founded upon an allegation of adultery” and, consequently, the section’s first sentence does not disqualify Mr. Poppe from testifying against his wife. And it is equally obvious that the final sentence of section 349, relating to the marital privilege, does not bar disclosure of Mrs. Poppe’s declaration to her husband. The statute does not render inadmissible all communications between husband and wife, even though made in privacy and *315 when alone. Designed to protect and strengthen the marital bond, it encompasses only those statements that are “ confidential,” that are induced by the marital relation and prompted by the affection, confidence and loyalty engendered by such relationship.[1] Whether, therefore, a particular communication is to be excluded from evidence on the ground that it is confidential necessarily involves a preliminary question of fact for decision by the trial judge, and it matters not that the ultimate issue for determination by the trier of the facts (here, cruelty) is essentially the same as the issue which determines admissibility. (Prall v. Hinchman, 6 Duer 351, 357; United States v. Cotter, 60 F. 2d 689, 691; McCormick on Evidence [1954], pp. 123-125.)
Depending as it does upon the character of the communication, as well as upon the relationship of the parties, it may be impossible to formulate an all-embracing definition or an infallible guide. It is, however, perfectly clear that the statute was never designed to forbid inquiry into the personal wrongs committed by one spouse against the other, or that it was ever intended to label confidential a communication aimed at destroying the marital relation or stamp with a seal of confidence and protect from disclosure an unfounded charge of adultery or, more to the point, a declaration by a wife that she loves another *316 man, has had improper relations with him and plans to leave home and live with him. (See Lanyon’s Detective Agency v. Cochrane, 240 N. Y. 274, 279, 280-281; Woodrick v. Woodrick, 141 N. Y. 457, 462; de Meli v. de Meli, 120 N. Y. 485, 493; Millspaugh v. Potter, 62 App. Div. 521, 523-524; Fowler v. Fowler, 58 Hun 601, opinion in 11 N. Y. S. 419; see, also, People v. McCormack, 278 App. Div. 191, 196-197, affd. 303 N. Y. 782; United States v. Mitchell, 137 F. 2d 1006,1009; Sexton v. Sexton, 129 Iowa 487, 493 et seq.)
In the Woodrick case (supra, 141 N. Y. 457), for instance, the defendant husband was permitted to testify, over his wife’s objection, of a private interview with her and to relate what each said to the other when he accused her of adultery. In answer to the wife’s argument that the trial judge erred in allowing the communication to be divulged, this court declared that “ We think this evidence was competent [against the wife] on the issue of cruel and inhuman treatment, and the trial judge properly admitted it, stating as he did to the jury that it was not admitted as bearing on the question of adultery ” (p. 462). And in the Cochrane case (supra, 240 N. Y. 274), the court also recognized that no rule or privilege would prevent a wife, plaintiff in a separation suit, from testifying that her husband had told her that “he loved another woman,” was going to live with her and would not be “ coming back home.” It appeared that, after the wife had been so advised by her husband, she hired a detective agency to shadow him in order to obtain evidence of infidelity for use in her separation action against him. The agency procured such evidence and later proceeded to sue the husband for the services rendered the wife on the theory that they constituted a necessity for which he was responsible. Holding that the services were not necessary to enable the wife to successfully maintain her action for separation, the court made this significant statement (pp. 280-281): “ The cruelty, if any, * * * consisted not in these promiscuous acts of intercourse upon the part of her husband, but in his treatment of his wife and the things he said to her * * *. She also knew what the husband had told her as to the cause of his leaving, and could have testified to it in court without the aid and assistance of the detective.” (Emphasis supplied.)
*317 In the case before us, the husband’s statement of what his wife told him was offered on the issue of her cruelty, and the trial court was fully warranted, in admitting it, in deciding that the presumption of confidentiality had been rebutted. (See 8 Wigmore on Evidence [3d ed., 1940], pp. 646-647.) The disclosure related, it is evident, not to the confession of a penitent wife confiding to her husband the story of her wrongdoing, but to a defiant declaration of misconduct and of an intention to persist therein and go away with the other man. No considerations of domestic peace or of conjugal loyalty, no considerations of the sanctity of the marital relation, prohibit disclosure of such a communication. The wife’s statement in the present case, particularly when coupled with her subsequent conduct, not only negated any inference that the statement was induced by any confidence or trust between the parties, but actually demonstrated its absence.
No policy has prohibited one spouse from testifying as to assaultive acts committed by the other, and such testimony has always been admissible on the issue of cruelty. By parity of reasoning, no policy exists, or may properly be advanced, to forbid a husband or .wife from giving evidence, likewise for its bearing on the issue of cruelty, as to statements made by the other which may have an effect no less cruel and no less destructive of the marital relation, though their impact be upon the mind and spirit rather than the body. It has always been recognized that an unfounded charge of infidelity by one spouse to the other is admissible to prove cruelty (see de Meli v. de Meli, supra, 120 N. Y. 485, 493; Millspaugh v. Potter, supra, 62 App. Div. 521,523), and there is no discernible basis for differentiating in this regard between a ‘ ‘ cruel ’ ’ accusation of adultery and an equally “ cruel ” admission of past infidelity, particularly when to it is added an assertion of planned elopement.
It would be anomalous if it were to be decided that a privilege designed to encourage the marital relation operates to permit one spouse to be cruel to the other as long as the hurt-provoking words are spoken in private. The cloak of secrecy placed about confidential communications between husband and wife could never have been, and was not, designed to force the victim to put up with such conduct. It could never have been, and was not, intended to seal his lips and prevent him from relying upon such behavior as evidence of cruelty in a separation suit sub *318 sequently brought or in defense, as here, to a charge of abandonment when, no longer able to bear his mate’s verbal cruelty, he departs the marital home. In short, it would be a paradox to treat as confidential a communication whose unequivocal purpose and inevitable consequence were to destroy all confidence that may have existed.
The cases relied upon by plaintiff wife (Warner v. Press Pub. Co., 132 N. Y. 181; Hanor v. Housel, 128 App. Div. 801; Yax v. Yax, 125 Misc. 851, affd. 217 App. Div. 714) are basically different from the one before us. It is enough to observe that in no one of them was the declaration offered, as it was here, to establish the cruelty of one spouse toward the other, and in none did the communication, by its content or context, give rise to an implication that it was other than confidential.
The judgment should be affirmed.

. This privilege must be distinguished from the general incompetency of one spouse to testify against the other — recognized in some states and in the federal courts but not in this state — which is not applicable where the issue is whether one spouse wronged the other. (See 8 Wigmore on Evidence [3d ed., 1940], § 2239; McCormick on Evidence [1954], § 88.) To the contention that the marital privilege for confidential communications may never be asserted in an action between husband and wife, it is sufficient merely to note that section 349 of our Civil Practice Act does not provide that confidential communications between husband and wife “ shall be privileged ” in all cases “ except ” a ease brought by one against the other. (Compare statutes of other jurisdictions expressly providing for such an exception, as well as others: e.g., Cal. Code Civ. Proc., § 1881; Col. Rev. Stats., § 153-1-7, subd. 1; Minn. Stats., § 595.02, subd. [1]; Wis. Stats., 1955, § 325.18; see, also, 2 Wigmore, op. cit., § 488, p. 530 et seq., n. 2, listing statutes; McCormick, op. cit., § 88, p. 177; American Law Institute, Model Code of Evidence [1942], Rule 216; Uniform Rules of Evidence, Rule 28.) Indeed, far from even suggesting that the New York statute does not apply in a suit between the spouses, our courts have always assumed that in a matrimonial action, as in every other, admissibility depends upon whether the communication was a confidential one when made. (See, e.g., Southwick v. Southwick, 49 N. Y. 510, 518-519; Sheldon v. Sheldon, 146 App. Div. 430, 432; Symington V. Symington, 215 App. Div. 553, 556-557.)