Burke, J.
The threshold question is whether a wife can testify in an action against her husband as to the presence in her home of visitors in the company of the husband. We believe that she may since the 1 ‘ communication ’ ’ was neither induced by the marital relation nor made in confidence. This is made apparent by the facts that it was made in the presence of the third parties, and that it was voluntarily disclosed by the husband to a State trooper prior to the trial.
In a statement given to the police, defendant related how he drove a few friends to Batavia where they proceeded, allegedly without his knowledge, to illegally appropriate some guns from a local shop. Upon their return to Buffalo they stopped at his house. He stated that When his wife came into the kitchen and saw the guns she told them to leave.
The wife was permitted to testify, over objection, that she arose at approximately 6:00 a.m. on the morning in question in order to get some milk for the baby. She stated that as she entered the kitchen she saw her husband and a few of his friends. When she testified that she was not sure if there were any guns, she was reminded that she told the Grand Jury that she had seen the guns. She further testified that she and her husband as well as the others later went on a previously planned picnic.
The friends testified that the defendant was their accomplice in the crime, and that the guns were taken to his house because *80 he was to dispose of them. They further testified that, when defendant’s wife entered the kitchen, defendant put a gun to her head. Defendant’s wife denied this.
It is urged upon these facts that defendant, in confidence, communicated to his wife the incriminating fact that accomplices were present in the home completing the crime. Appellant argues, citing People v. Daghita (299 N. Y. 194), that their presence was the “ disclosive act ” observed by the wife. We do not agree that this disclosure was privileged.
In Daghita (supra) .this court held, and rightfully so, that acts as well as words may be the subject of communications. However, we by no means intended by that decision to circumvent the limitation of our statute (Penal Law, § 2445) that the communications must be confidential in order to be privileged, as distinguished from the common-law rule which completely disqualified one spouse from testifying against the other. (See, generally, Richardson, Evidence [8th ed.], § 457; 8 Wigmore, Evidence [3d ed.], § 2337; McCormick, Evidence [1954], § 88.)
Most jurisdictions, as in New York, have by legislative enactments substituted a privilege[1] based upon communications sometimes characterized as confidential. (See 2 Wigmore, Evidence, § 488, for a listing of statutes.) As is obvious, these statutes were designed to protect not all the daily and ordinary exchanges between the spouses, but merely those which would not have been made but for the absolute confidence in, and induced by, the marital relationship. (Parkhurst v. Berdell, 110 N. Y. 386.) This standard must be preliminarily applied by the Trial Judge to the challenged communication so that he may ascertain whether the witness can properly be compelled to relate it to the jury. Of course, since each case contains peculiar circumstances it is, as a practical matter, “ impossible to formulate an all-embracing definition or an infallible guide ’ ’ (Poppe v. Poppe, 3 N Y 2d 312, 315). There are, however, some principles and illustrations at hand. For example, where the communication involved ordinary business matters (Parkhurst v. Berdell, supra) or unfounded accusations of adultery or other *81 abusive language (Poppe v. Poppe, supra; de Meli v. de Meli, 120 N. Y. 485; Millspaugh v. Potter, 62 App. Div. 521; Sheldon v. Sheldon, 146 App. Div. 430), the privilege was not held to attach. On the other hand, where there has been an admission or confession of adultery, as distinguished from an abusive disclosure (see Lanyon’s Detective Agency v. Cochran, 240 N. Y. 274; Woodrick v. Woodrick, 141 N. Y. 457; People v. McCormack, 278 App. Div. 191, affd. 303 N. Y. 782), we have allowed the privilege to be invoked, stating: “It cannot be supposed that both husband and wife would have been willing to discuss such a subject in the presence of other persons or would have consented to a repetition of the conversation by either party to it. Its nature, and the relation of the parties, forbade the thought of its being told to others, and the law stamped it with that seal of confidence which the parties in such a situation would feel no occasion to exact.” (Warner v. Press Pub. Co., 132 N. Y. 181,186.)
The application of these decisions to the present case reveals at once the common character of the communication deemed confidential. Not only was it originally made in the presence of the friends and voluntarily repeated prior to the trial, but it seems to have been made under circumstances which would indicate that it was not originally intended to be communicated to the wife. Although we hesitate to believe that the defendant put a revolver to his wife’s head,[2] it is our opinion that defendant and the others were surprised by the wife’s untimely entrance. The attempt by the District Attorney to impeach the witness or refresh her recollection in regard to her testimony before the Grand Jury was merely reference to matter already disclosed by the husband. Although this prior disclosure may not be deemed a waiver, it, along with other circumstances, certainly confirms the fact that the communication was never intended to be confidential.
Moreover, the oft-stated presumption (not rebutted in this record) relied on by a majority of jurisdictions is that communications originally made in the presence of third parties are *82 not confidential. (People v. Lewis, 62 Hun 622, affd. 186 N. Y. 633; People v. McCormack, 278 App. Div. 191, 195, 199, supra; Wolfle v. United States, 291 U. S. 7, 17; McCormick, Evidence, § 83, p. 171; 58 Am. Jur., Witnesses, § 381.) “ [L]itigants have often sought to have a spouse’s testimony as to transactions of the witness ’ husband or wife excluded on the ground that its revelation would be a violation of marital confidence. Such attempts have been generally unsuccessful, the testimony being-admitted on the ground that the acts did not constitute communications to the spouse, or that knowledge of the acts was not obtained as a result of the marital relation.” (10 A. L. R. 2d 1416-1417, and cases cited therein.) Those few States, which prohibit such disclosures, base this exclusion either upon statutes or common-law rules (10 A. L. R. 2d 1418, 1423) neither of which are applicable in New York.
In the Wolfle decision (supra) there is a suggestion that a communication may at times be made in confidence although in the presence of a third person. However, the court in that case concluded that the written communication by a husband to his wife was not privileged because of the voluntary disclosure by him to his stenographer who prepared the letter. This conclusion based upon the accepted rule in regard to communications in the presence of third parties was expressed in the following-language (p. 17): “ The uniform ruling that communications between husband and wife, voluntarily made in the presence of their children, old enough to comprehend them, or other members of the family within the intimacy of the family circle, are not privileged, Linnell v. Linnell, 249 Mass. 51; 143 N. E. 813; Cowser v. State, 70 Tex. Cr. Rep. 265; 157 S. W. 758; Fuller v. Fuller, 100 W. Va. 309; 130 S. E. 270, is persuasive that communications like the present, even though made in confidence, are not to be protected. The privilege suppresses relevant testimony and should be allowed only when it is plain that marital confidence can not otherwise reasonably be preserved ” (emphasis supplied).
The admission of this communication is no threat to the preservation of marital confidences and certainly no more sacrosanct than a confidence communicated in the presence of “ other members of the family within the intimacy of the family circle” (Wolfle v. United States, supra, p. 17).
*83 If there were no other facts evidencing an absence of confidence, and if we could sever the “ disclosive act” from the presence of the third parties, we might be inclined to agree that the communication was confidential. For example, defendant might have told his wife, while alone, that his accomplices and the stolen goods were in the house. However, when the communication is made in their presence, we prefer to rely on the presumption that it was not deemed a confidence between husbcmd and wife, regardless of the fact that all present may have expressly sworn themselves to secrecy. While the acts and statements of the visitors may be deemed confidences between accomplices, they by no means come within the husband-wife privilege.
The implications of a reversal would be far reaching and clearly not allied with the legislative design to abolish the common-law incompetency which found it generally distasteful to incriminate one spouse by any knowledge obtained by the other, confidential or otherwise. The instant privilege, although characterized by some as an “ extremely effective * * * stumbling block # * * to obstruct the attainment of justice ” (McCormick, Evidence, supra, p. 172), is founded on a sound public policy to promote confidence between husband and wife. Its application to the circumstances here under consideration is certainly not supported by this policy.
Accordingly, the judgment must be affirmed.

. The privilege really belongs to the spouse against whom the testimony is offered. For example, if timely objection is made, not only can the witness-spouse not be compelled to testify, but she could not even voluntarily testify to any confidential communication. (People v. Wood, 126 N. Y. 249.)

. If believed, this alone would be enough to remove the communication from the protection of the privilege. Both the majority and concurring opinions in the Poppe case acknowledged that the statute was never designed to forbid inquiry into the personal wrongs committed by one spouse against the other.