Joseph Harris, J.
The defendant moves for an order dismissing the indictment on the following grounds: (1) insufficiency of the evidence before the Grand Jury; (2) selective enforcement; and (3) in the interest of justice.
CPL 210.20 (subd 1, par [b]) provides that a superior court *749 may, upon motion of the defendant, dismiss an indictment pending against him upon the ground that "the evidence before the grand jury was not legally sufficient to establish the offense charged or any lesser included offense”.
Legally sufficient evidence means "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof’ (CPL 70.10, subd 1). Thus, the People are required to put before the Grand Jury admissible evidence which establishes a prima facie case.
The defendant contends among other things, that certain testimony of two witnesses before the Grand Jury, pertaining to conversations with the defendant, was inadmissible by virtue of the "social worker-client” privilege of CPLR 4508.
The pertinent facts, as appear in the Grand Jury minutes, are as follows:
On January 9, 1977, the defendant and his wife called Dr. Douglas Larsen, a pediatrician, and told him that their three-month-old son, Jason, "wasn’t acting right.” Dr. Larsen agreed to examine Jason at the Albany Medical Center emergency room and did so about one hour later at 5:00 p.m.
The examination and X rays revealed that Jason had a fractured skull, fractured ribs, trauma to the arms and a small chip on the right tibia.
Dr. Larsen testified that these injuries were "unusual” in that an infant of Jason’s size, under normal circumstances, would not be able to inflict that sort of wound on himself.
The doctor further testified that such injuries were consistent with an intentional striking by another individual.
Mrs. Easter testified that she was home the entire day in question with her husband and son but she had no knowledge of how or when he was injured or who injured him, if anyone.
Judith Jablonka, a pediatric social worker with the Albany Medical Center Department of Patient and Family Counseling Services, testified that sometime after January 9, 1977, Dr. Larsen reported Jason’s case to her office because he suspected Jason to be the victim of child abuse. She then contacted the defendant and his wife and set up an interview with them to discuss Jason’s case and to inform them that she was required to report incidents of suspected child abuse to the New York State Child Abuse Registry. (The defendant contends that it was he and his wife who sought out the counseling of Ms. *750 Jablonka, the initiative being on their part; this factual dispute cannot, however, be determined in a motion to dismiss an indictment for insufficiency of the evidence before the Grand Jury.)
Ms. Jablonka testified that at this meeting, which took place on January 11, 1977, the defendant admitted to her that he had "hit” or "harmed” Jason.
Jamie Greenberg, a case worker with the Child Protective Unit of the Albany County Social Services Department, testified that on or about January 11, 1977, his office received a report from the "State Central Registry” saying they had received from Albany Medical Center a report of suspected child abuse relating to Jason Easter. The report stated that the defendant had admitted that he believed he had caused the child’s injuries.
Thereafter, Mr. Greenberg received a telephone call from the defendant who told him he was "interested in discussing the allegations made against him.” An appointment was set up for that afternoon. Present at the meeting were Mr. Greenberg, the defendant, and the defendant’s wife. Green-berg read to the defendant the report he had received. The defendant denied hitting the child but stated that he had shaken the child "pretty vigorously” and "believes he pushed the child’s head into the mattress.”
Jason’s medical records from the Albany Medical Center Hospital were put into evidence. These showed, among other things, that the "fractures were approximately seven to 12 days old at the time of admission; the X rays taken at the time of this admission were compared with films from St. Peter’s Hospital taken on previous admissions and were found to be new fractures.”
The court is presented with the following threshold questions:
(1) Are privileged communications prima facie admissible until objected to, or are they prima facie inadmissible until waived by some affirmative act?
(2) Was any of the testimony presented to the Grand Jury in fact privileged; more particularly did the following privileges obtain:
(a) doctor-client privilege between Dr. Larsen and Jason Easter;
*751 (b) social worker-client privilege between Judith Jablonka and the defendant;
(c) social worker-client privilege between Jamie Greenberg and the defendant;
(d) husband-wife privilege between the defendant and his wife.
(3) Under the circumstances was the defendant required to be given Miranda warnings before being questioned?
A fair reading of the privileged communications sections of CPLR article 45 leads inevitably to the conclusion that the privileges therein set forth are self-triggering and are waived only by affirmative action on the part of the person cloaked with the privilege.
The social worker, doctor and spouse privileges all contain language to the effect that unless there is a waiver by the beneficiary of the privilege, no disclosures shall be allowed. Since the defendant was not and could not be present at the Grand Jury proceedings, there was no way for him to assert any privileges claimed by him, and there is no proof that he affirmatively waived them. As such testimony, if in fact privileged, would have to be excluded if objected to, it would also be improper to present it to the Grand Jury. (People v Eckert, 2 NY2d 126, 128; People v McAlpin, 50 Misc 2d 579, 580.)
Thus the court holds that the communications in question, if in fact privileged, would be prima facie inadmissible and as such could not contribute to the weight of evidence needed to sustain the indictment in question. (Cf. People v Oakley, 28 NY2d 309; People v Avant, 33 NY2d 265.)
With respect to the physician-patient privilege that existed between Dr. Larsen and Jason Easter, CPLR 4504 (subd b) provides as follows: "A physician * * * shall be required to disclose information indicating that a patient who is under the age of sixteen years has been the victim of a crime.”
The evidence before the Grand Jury is uncontroverted that Jason was under the age of 16 years and his injuries indicated that he had been the victim of a crime.
Accordingly, the doctor’s testimony was competent and it was properly received in evidence.
With respect to the husband-wife privilege existing between the defendant and his wife, CPLR 4502 provides that: "A husband or wife shall not be required, or, without consent of the other if living, allowed, to disclose a conñdential communi *752 cation made by one to the other during marriage.” (Emphasis added.)
However, not all communications between husband and wife are privileged. The privilege does not protect "all daily and ordinary exchanges between the spouses, but merely those which would not have been made but for the absolute confidence in, and induced by, the marital relationship.” (People v Melski, 10 NY2d 78, 80.)
Applying this rule, no part of Mrs. Easter’s testimony could be considered a "confidential communication”; accordingly, it was properly admitted into evidence before the Grand Jury.
With respect to the testimony of the two social workers, the defendant contends that such testimony is barred by CPLR 4508 which reads, in pertinent part, as follows: "A person duly registered as a certified social worker under the provisions of article one hundred fifty-four of the education law, shall not be required to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment, nor shall any clerk, stenographer or other person working for the same employer as the certified social worker or for the certified social worker be allowed to disclose any such communication or advice given thereon”. (Emphasis added.)
The Legislature, in creating certain privileges against disclosure of confidential communications, made the determination that under certain circumstances it is in the best interests of society to encourage people to seek professional advice and in so doing disclose freely the facts in reference to which they seek advice, without fear that such facts will be made public to their disgrace or detriment.
Where, however, society has an interest in the confidential information which overrides its interest in fostering the confidential relationship, the Legislature has carved out exceptions to the various privileges, in which cases the cloak of confidentiality must fall.
One such exception involves the area of child abuse. CPLR 4508 (subd 3) provides: "where the client is a child under the age of sixteen and the information acquired by the certified social worker indicates that the client has been the victim or subject of a crime, the certified social worker may be required to testify fully in relation thereto upon any examination, trial or other proceeding in which the commission of such crime is a subject of inquiry.”
*753 There is no dispute that the social workers who testified were working under a certified social worker; that the child was under 16; that information obtained by the social workers indicated that the child had been the victim of a crime; and that the Grand Jury was a proceeding in which the commission of such crime was the subject of inquiry.
The only question remaining is whether the child was a "client.”
Both social workers originally entered this case by virtue of title 6 of article 6 of the Social Services Law — "Child Protective Service.”
This title makes it mandatory for certain designated persons — social workers being among them — to report suspected cases of. child abuse (Social Services Law, § 413). Failure to do so is a class A misdemeanor and also exposes one to civil liability (Social Services Law, § 420).
The legislative intent in creating the Child Protective Service is set forth in section 411 of the Social Services Law: "Abused and maltreated children in this state are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment. It is the purpose of this title to encourage more complete reporting of suspected child abuse and maltreatment and to establish in each county of the state a child protective service capable of investigating such reports swiftly and competently and capable of providing protection for the child or children from further abuse or maltreatment and rehabilitative services for the child or children and parents involved.”
The above-quoted language and the comprehensive framework of the Child Protective Service as set forth in title 6 leads to the inescapable conclusion that the child is clearly the chief party in interest of the social worker in cases of child abuse and, therefore, can properly be considered his client. In the instant case it is clear the abused child was the "client” of both social workers involved.
Being the "client” of the social worker, and the child being under the age of 16 and the victim of a crime, the exception to the privilege of CPLR 4508 applies and the social worker may disclose all pertinent information regarding the suspected crime.
The court finds, accordingly, that under the circumstances of this case the social worker-client privilege did not obtain. *754 Accordingly, such testimony was competent and was properly considered by the Grand Jury.
With respect to the defendant’s contention that Miranda warnings should have been given by the social worker, the record discloses that the defendant voluntarily sought them out and in no way can it be said that the defendant was in custody. As the Supreme Court stated in Oregon v Mathiason (429 US 492), Miranda is limited to a coercive environment. Such was not the case here. Even so, however, an indictment is not rendered infirm because evidence before the Grand Jury may at some subsequent time be held to be inadmissible because it is the result of an involuntary statement. "Evidence of [this] kind stands sufficient until nullified.” (People v Oakley, 28 NY2d 309, 312.)
The court will, however, hold a Huntley hearing at a time to be appointed, to examine the voluntariness of the admissions with respect to the other requirements of CPL 60.45.
Because the court has held that the testimony of the social workers is otherwise admissible it does not reach the question of whether the presence of a third party, in the person of the defendant’s wife, destroyed the social worker-client privilege.
The court finds that there was legally sufficient evidence before the Grand Jury to establish the commission by the defendant of the offense charged in the indictment or lesser included offenses.
Accordingly, the motion by the defendant to dismiss the indictment based on the insufficiency of evidence before the Grand Jury is denied.
The court has examined defendant’s other arguments and finds them to be without merit.
Any request not specifically granted is denied.