Chief Judge Cooke
(dissenting in part). I dissent in part. I would modify the order of the Appellate Division and answer the certified question in the negative.
The order of the Appellate Division affirms an order of Special Term directing plaintiff to appear for oral examination concerning her conversations both with decedent, her late husband, and with decedent’s psychiatrist occurring after decedent’s death. I concur in permitting disclosure of the latter, but I would preclude the questioning of plaintiff about her discussions with decedent concerning the reasons for and circumstances of psychiatric care.
There is no quarrel with the determination that the commencement of the wrongful death action placed in issue decedent’s mental condition, requiring disclosure of the communications between decedent and his psychiatrist. While plaintiff may not rely on the doctor-patient privilege with respect to her talks with the psychiatrist, I cannot concur in *319 the majority’s abrogation of the privilege for confidential marital communications. The result reached today is not supported by the legislative statement codifying the privilege; nor is it justified in the circumstances of this case. More fundamental, however, this result seriously undermines the strong social policy supporting the privilege and marks an unexplained departure from prior precedent (see Warner v Press Pub. Co., 132 NY 181).
The privilege for marital communications was born of the recognition that the privacy surrounding the marital relation should be held inviolate in order to foster mutual confidence between husband and wife (see People v Daghita, 299 NY 194, 199; 8 Wigmore, Evidence [McNaughton rev], § 2332). To prevent destruction of the confidence and trust existing between spouses, it has long been recognized that confidential communications "should not be drawn from either party by any process of law” (People v Hayes, 140 NY 484, 495).
Of course, to mandate such extraordinary protection, the communication must have been made in confidence, for the privilege "encompasses only those statements that are 'confidential’ that are induced by the marital relation and prompted by the affection, confidence and loyalty engendered by such relationship” (Poppe v Poppe, 3 NY2d 312, 315; see, also, People v Melski, 10 NY2d 78, 80). Thus, there is no privilege for communications that are designed to injure the other spouse or that reflect a disregard of the very relation justifying the privilege (Poppe v Poppe, supra). Nor is testimony concerning a physical assault prohibited merely because it was committed in the absence of third persons (see Poppe v Poppe, supra, at p 317; People v McCormack, 278 App Div 191, 196-197). But a communication that is made in confidence, induced by and in reliance on the marital relationship and indicative of the trust between spouses, is shielded by the privilege. Such confidence should not be destroyed by forces outside the marriage, whether by legal compulsion or otherwise.
The majority does not dispute that the communications sought to be disclosed in the instant case come within the long-honored privilege. Trust in the inviolability of communications to a spouse clearly would prompt one to reveal what are often the painful experiences and feelings necessitating psychiatric treatment. Notwithstanding the conceded applicability of the privilege, the majority overrides its salutary *320 purpose and holds, based upon its view of "the better policy”, that the privilege may not be ' invoked by a plaintiff. A Hobson’s choice thus confronts a litigant: betray the trust and confidence of one’s spouse or forego one’s right to seek redress for a grievous wrong.
The rule codifying the privilege permits no such drastic result. CPLR 4502 (subd [b]) provides that "[a] husband or wife shall not be required, or, without the consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage.” By its terms, the death of one spouse does not destroy the privilege and the surviving spouse may, but cannot be compelled to, disclose the communications by the deceased spouse (see Richardson, Evidence [10th ed — Prince], § 455). And the rule does not mandate that the privilege be available only in a defensive posture. While the Legislature has made the privilege subject to certain exceptions (e.g., Family Ct Act, § 1046, subd [a], par [vii] [privilege not available in a proceeding alleging child abuse or neglect]; Social Services Law, § 384-b, subd 3, par [h] [privilege not available in proceeding to terminate parental rights]), there is no legislative expression that a plaintiff may not employ the shield of the privilege.
Prior to today, waiver of a privilege was accomplished by express consent of the spouse or by failure to interpose a timely objection (Parkhurst v Berdell, 110 NY 386). Indeed, this court has allowed a party seeking affirmative relief to invoke the marital privilege (Warner v Press Pub. Co., 132 NY 181, supra). But, purportedly in the name of fairness, the majority overrides this well-settled principle and concludes that the holder of a privilege waives it when he or she brings an action to seek redress for a wrong committed by another. Such restriction is unwarranted. Any rule of evidence that excludes relevant testimony potentially works some unfairness as a result (see, e.g., CPLR 4519; see, generally, Richardson, § 396 [criticism of the dead man’s statute]). But it is no more unjust to permit a plaintiff to invoke a privilege than it is to permit a defendant to defeat a meritorious claim by hiding behind the same privilege.
The judgment of the Legislature, reflected in the codification of the privilege, expresses the long-standing social policy that the injury to domestic harmony and marital privacy occasioned by the unrestricted search for relevant information is *321 too great to endure (see People v Hayes, 140 NY 484, 496, supra; Common Law Commission, Second Report 13 [1853], quoted in 8 Wigmore, at § 2332). Thus, the balance between potential unfairness to opposing litigants and preservation of the marital privilege has been struck in favor of the privilege —whether information is sought to establish a claim or to defend against it. While some may disagree with the wisdom of this choice, it is improper for a court to substitute its judgment for that of the Legislature (see National Psychological Assn. for Psychoanalysis v University of State of N. Y., 8 NY2d 197, 203, app dsmd 365. US 298; Thompson v Wallin, 301 NY 476, 488, affd sub nom. Adler v Board of Educ., 342 US 485).
These considerations notwithstanding, the majority has placed its imprimatur on a practice which compels a spouse to testify to the contents of communications made in confidence, thereby eviscerating the sphere of marital privacy long cherished in our society. Wholesale destruction of the marital privilege is unnecessary to ensure the integrity of the judicial process and such a drastic rule serves no purpose where the information sought is available through other sources. The impact at trial, if any, of the exercise of the privilege can be minimized by the less drastic measure of permitting the fact finder to draw an unfavorable inference from the failure to disclose.* Accordingly, I do not join in this needless assault upon the marital bond.

 While the Constitution might require that rules of evidence or privileges give way in a criminal proceeding (see Davis v Alaska, 415 US 308 [confrontation clause prevents invocation of privilege against disclosure of juvenile delinquency proceeding]; Chambers v Mississippi, 410 US 284 [confrontation clause and due process override rule prohibiting impeachment of one’s own witness and objection based on hearsay]), no case has been discovered which even intimates that application of the ordinary rules of evidence would be unconstitutional in the civil context.
That we have apparently accepted the proposition that, as a matter of policy, a plaintiff may not sue on a claim and yet assert the constitutionally guaranteed privilege against self incrimination (see Levine v Bornstein, 6 NY2d 892; Steinbrecher v Wapnick, 24 NY2d 354) does not mean that every privilege must fall without regard to the circumstances of the case or the opposing litigant’s need for the information (cf. 30 Stan L Rev 935 [suggesting that even where confrontation and compulsory process rights are implicated, the defendant’s need for the information in the particular case must be balanced against the interest sought to be protected by the privilege asserted]; see, also, 60 Minn L Rev 1086). Indeed, in Steinbrecher, it was noted that "courts will not permit [the use of the privilege] as a weapon to unfairly prejudice an adversary” (24 NY2d, at p 362 [emphasis added]). Given the unavailability of the doctor-patient privilege here, it cannot be said that defendants will be prejudiced by nondisclosure of marital communications concerning the same matter.