OPINION OF THE COURT
Lawrence H. Bernstein, J.
Does the marital privilege which prohibits the disclosure of confidential communications between spouses (CPLR 4502, subd [b]) preclude the admission into evidence of a confession by a husband to his wife which was made in conjunction with other threatening and abusive behavior and at a time when the marital relationship was seriously impaired?
This unusual and intriguing question arose at defendant’s *1051 recent trial for arson and other charges stemming from an extensive early morning fire, on August 26, 1979, that severly damaged the apartment belonging to Jane Blackwell at 795 Pelham Parkway North in The Bronx.
At the trial, the People intended to call as their principal witness Mrs. Donna D’Amato, the estranged wife of the defendant herein, to testify that her husband admitted to her that he deliberately set this blaze.
After a hearing on defendant’s motion to preclude such testimony, this court found that said confession had not been induced by nor made in reliance upon any confidential relationship with his wife and, therefore, was unprivileged and admissible into evidence.
The jury subsequently found the defendant guilty of arson in the second degree as well as the lesser crimes of criminal trespass in the second degree and petit larceny.
This formal opinion is being issued to supplement the court’s previously entered findings on the record and to more fully discuss the applicable law involved in the decision to admit this adverse spousal testimony into evidence.
At common law, one spouse was totally disqualified from testifying either for or against the other (see People v Melski, 10 NY2d 78, 80; Trammel v United States, 445 US 40; see, generally, McCormick, Evidence [2d ed], § 66).
In New York, by legislative modification, this once rigid rule of absolute spousal incompetence has been transformed into a decidedly more limited testimonial privilege. Embodied in its present form in CPLR 4502 (subd [b]), the marital privilege provides that neither spouse be “required, or, without consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage.”
Not every conversation between husband and wife made in the absence of third parties is held to be “confidential” within the meaning of the privilege (see People v Dudley, 24 NY2d 410). The statutory privilege covers only those private exchanges which “would not have been made but for the absolute confidence in, and induced by, the marital *1052 relationship” (People v Melski, supra, p 80; see, also, Parkhurst v Berdell, 110 NY 386, 393).
Whether any particular communication is privileged as having been made in reliance upon the marital confidence will depend upon the nature and form of the communication, the circumstances immediately surrounding its making and the status of the relationship between the parties at the time. Any such determination is a preliminary question of fact to be decided by the trial court (Poppe v Poppe, 3 NY 2d 312).
Accordingly, upon the invoking of the privilege by the defendant herein, a hearing was held outside of the presence of the jury on the admissibility of the defendant’s purported confession to his wife.
The testimony of Donna D’Amato, the only witness at the hearing, revealed that in August of 1979, she and the defendant had been married for only 10 months. From the outset, this marriage had been plagued with problems resulting in a number of temporary separations.
Just six days before the fire in question, Mrs. D’Amato again left the defendant. Intending to permanently sever their relationship, she secretly moved to the New Jersey home of the uncle of her close friend, Jane Blackwell, where she expected the defendant would be unable to locate her. In the past, during the other separations, the defendant had known she was staying with her relatives and had prevailed upon her there to come back to live with him.
Unfortunately, for Mrs. D’Amato, her hope of avoiding detection by the defendant proved unfounded for on the day of the fire he managed to track her down in New Jersey. The next day, back in The Bronx, he threatened her that if she didn’t return to him, he would burn down the homes of her mother and sister as he had done to her friend Jane Blackwell’s apartment.
Acting solely out of fear for the safety of Jier relatives, she acquiesced in this demand. Thereafter, she and her infant daughter were compelled to accompany the defendant on a month-long trip across the country towards California. Living and sleeping for the most part in their car, the three were supported largely through the thefts of the defendant.
*1053 Whenever in the course of this trip Mrs. D’Amato sought to leave the defendant, he repeated his earlier threat to do to her family’s home what he had done to Jane’s.
Finally, in Las Vegas, Mrs. D’Amato seized upon the opportunity presented by the defendant’s arrest and temporary incarceration for a crime he committed there to get out from under his control and escape to The Bronx. Upon her return there, she testified against him at the Grand Jury which voted the indictment herein and subsequently notified the police when the defendant reappeared after his release from prison in Nevada. y
The traditional public policy justification for the creation and maintenance of the husband-wife confidential communications privilege is that it encourages freedom of communication between spouses which, in turn, preserves and promotes a harmonious marital relationship (see Poppe v Poppe, 3 NY2d 312, supra; People v Daghita, 299 NY 194; Wolfle v United States, 291 US 7). In this regard, then, the privilege will extend only to those communications that were “induced by the marital relation and prompted by the affection, confidence and loyalty engendered by such relationship” (Poppe v Poppe, supra, p 315; see, also, Prink v Rockefeller Center, 48 NY2d 309, 318 [dissenting opn of Cooke, Ch J]).
The People argue that the defendant herein not be afforded the extraordinary benefit of the privilege where, through his own abuse and misconduct, he destroyed any semblance of intimacy and trust in the marital relationship. In effect it is their contention that the D’Amato marriage was held together solely through the fear produced by the defendant’s threats and mistreatment and that, consequently, no “confidential” relationship existed between the spouses at the time of these admissions. Stated in another way, it is argued that there exists no useful purpose in applying a privilege designed to preserve the marital relationship where there is nothing left in the marriage to preserve.
While there has been some support for the assertion that the absence of a viable marital relationship should in and of itself be considered an exception tp the marital privilege *1054 (see, e.g., People v Dudley, 24 NY2d 410, 414-415, supra; People v Oyola, 6 NY2d 259, 267-268 [dissenting opn of Burke, J.]), such a proposition has never attained separate recognition (see People v Fields, 38 AD2d 231, affd 31 NY 2d 713).
Certainly, there is good reason for such judicial reluctance to become involved in a collateral assessment of the state of the marriage where the status of the relationship is equivocal, i.e., there is some reasonable possibility of reconciliation (see People v Oyola, 6 NY2d 259, 265, supra). Where, however, the marriage has deteriorated to a state of absolute disarray, the danger of injustice from the suppression of highly probative evidence becomes too great when balanced against the limited value in applying the privilege (see Prink v Rockefeller Center, 48 NY2d 309, 317-318, supra; McCormick, Evidence [2d ed], § 86, p 173; see, also, Trammel v United States, 445 US 40, supra [which documents the trend in State and Federal courts toward the admission of adverse spousal testimony]).
In the instant matter, there is no question that the D’Amato marriage was in utter shambles at the time of the admissions. In fact, it would not be farfetched to conclude that Mrs. D’Amato had become the virtual prisoner of her husband. Under these circumstances, exclusion of the incriminating statements would far more likely frustrate justice than promote any marital peace or harmony.
In any event, a decision to allow these confessions into evidence through the testimony of the defendant’s wife need not rest solely on a finding that the deteriorated state of the marriage is sufficient in itself to destroy the privilege. Under the unusual facts of this case, the form and substance of the communications themselves are such as to. remove the protection of the privilege.
Ordinarily, a statement by a husband to his wife that he has committed a crime is privileged as a communication which would not have been made “except in reliance upon the free and unrestrained privacy of the marital relation” (People v Daghita, 299 NY 194, 199, supra). As is obvious from the hearing testimony, however, defendant’s confessed involvement in the fire at the Blackwell apartment did not *1055 come as a remorseful outpouring of guilt and anxiety to his wife; rather his admission to the arson was an inseparable part of his larger threat to burn down the homes of his wife’s closest relatives unless she remained with him and was designed to give substance and credence to said threat. Such words of abuse and cruelty uttered with the intent to injure the other spouse fall outside of the privilege’s protection (compare, e.g., Poppe v Poppe, 3 NY2d 312, supra, and Lanyon’s Detective Agency v Cochrane, 240 NY 274 [where the abusive disclosures of adultery by the spouses were held unprivileged] with Warner v Press Pub. Co., 132 NY 181 [where the privilege was held to attach to an admission of adultery by a penitent spouse]; see, also, People v McCormack, 278 App Div 191, affd 303 NY 782).
Furthermore, by combining his confessions to starting the fire with the threat to repeat his actions against his wife’s family, it is apparent that the defendant himself was relying upon the fear produced by such threats rather than upon any confidential relationship in the marriage to preserve the secrecy of his misdeeds. Hence, the incriminating statements are not “confidential” (see People v Patterson, 39 NY2d 288, 304; People v Dudley, 24 NY2d 410, 415, supra).
Accordingly, under the special circumstances of this case, the need for the introduction of probative evidence for the proper administration of criminal justice far outweighs the interests promoted by the marital privilege. Defendant’s motion to preclude his wife from testifying against him is, therefore, denied.