Alexander, J.
(dissenting in part). In my view, the evidence in this case conclusively rebuts any presumption that the communication between the defendant and his estranged wife, which the majority and the court below would exclude as a "confidential communication”, was induced by any confidence in the marital relationship. The communication therefore was not privileged and was properly received in evidence. Accord *885 ingly, I respectfully dissent to the extent of voting to reverse the order of the Appellate Division and reinstate the judgment of conviction on the People’s appeal.
Some nine days after having shot and killed his estranged wife’s lover, the defendant returned from California where he had fled after the shooting with one of the children of the marriage. He telephoned his wife who initially was reluctant to speak to him but then relented. During their conversation she asked him: "Andy, why did you do that?”, to which he responded "Because I love you * * * that’s to prove my love to you.” She then asked him where he had gone after the shooting. He told her he had gone to California and that when he arrived there he called his mother and was told to come right back. His wife then asked him whether or not it "bother[ed] [him] that [he] killed somebody?” — "Don’t you have nightmares or anything?” He replied "[n]o it doesn’t bother me at all. That’s funny my mother asked me the same thing.”*
Despite the fact that the defendant and his wife had been separated for some five months; that she had been forced to take shelter in a battered women’s residence following their separation; that she had told him on more than one occasion that she no longer loved him; that on the day of the shooting he had punched her and chased her around the street and had later returned with a rifle which he fired at her while she was holding their child as a shield, narrowly missing her and telling her to "put the baby aside” and threatening to end his wife’s life "once and for all”, the majority flatly concludes that "the circumstances of [his] call to his wife shortly after his surrender, coupled with the substance of his declarations to her, reveal * * * that he 'clung to the illusion that they could still reconcile’ ” (majority mem, pp 883-884). In my view, neither a fair reading of the conversation nor any other circumstances revealed by this record fairly supports such a conclusion.
It has long been the rule, only recently reaffirmed by this court that the marital privilege is "[n]ot protective of all communications [between husband and wife, and] attaches only to those statements made in confidence * * * 'that are *886 induced by the marital relation and prompted by the affection, confidence and loyalty engendered by such relationship’ ” (Matter of Vanderbilt [Rosner—Hickey], 57 NY2d 66, 73; see also, Parkhurst v Bedell, 110 NY 386; Poppe v Poppe, 3 NY2d 312). A communication between husband and wife is said to be confidential if expressly made so "or if the subject is such that the communicating spouse would probably desire that the matter be kept secret, either because its disclosure would be embarrassing or for some other reason.” (McCormick, Evidence § 84, at 172 [1954].)
There is nothing in the content of the conversation that would indicate that it would not have been made but for " 'the absolute confidence in, and induced by, the marital relationship’ ” (People v Dudley, 24 NY2d 410, 414; People v Melski, 10 NY2d 78, 80) particularly where it appears that a like conversation may well have taken place between defendant and his mother; nor does that content indicate that the defendant "clung to the illusion that they could still reconcile.” And while it is true, as observed by the majority, that the mantle of confidentiality is not cast off by the mere fact that the parties are not living together at the time of the communication (People v Fields, 38 AD2d 231, 233, affd on opn below 31 NY2d 713) it nevertheless must appear that the communication was induced by an absolute confidence in the marital relationship. (People v Dudley, 24 NY2d 410, 414, supra; People v Melski, 10 NY2d 78, supra.) Indeed the very purpose of the privilege is to foster exchanges between spouses that would not have been made but for the absolute confidence in the marital relationship. (4 Benders New York Evidence § 245.03 [1] [a], at 446.1 [1982].) Here, there is no factual predicate in this record to support the conclusion that defendant "clung to the illusion that they could still reconcile.” The circumstances here are unlike the situation in Fields (supra), where defendant telephoned his wife shortly after the shooting to tell her about it and to seek refuge in her apartment or the situation in People v Oyola (6 NY2d 259), where defendant telephoned his wife shortly after having been arrested at her instigation for impairing the morals of their infant daughter, to confess his crime and to express his remorse. The circumstances in those cases afforded a factual basis for concluding that "the possibility of reconciliation ha[d] not been negated”. (People v Fields, 38 AD2d 231, 233, supra.) Here, by contrast, defendant’s wife had made it clear to him on repeated occasions that she did not love him *887 anymore. There is no evidence that he ever expressed a desire to or made any effort at a reconciliation. It was his wife’s testimony that throughout the months of their separation only on one occasion in June, did he protest any continuing love for her. The record makes clear that his continued contact with the family was because of his love for and desire to be protective of their two daughters, not because of any hope of reconciliation, or a view that the marriage was far from dead.
We have, on numerous prior occasions observed that "[w]hether a statement comes within the marital privilege is a preliminary question for the court, and involves a determination that must be made on an ad hoc basis” (see, Matter of Vanderbilt [Rosner—Hickey], 57 NY2d 66, 73, supra, and cases cited therein). Here the trial court determined that the communication was not protected by the marital privilege and a careful examination of this record fully supports that determination.
Chief Judge Wachtler and Judges Jasen, Simons, Kaye and Titone concur in memorandum; Judge Alexander dissents in part and votes to reverse on the People’s appeal in an opinion in which Judge Meyer concurs.
On the People’s appeal, order affirmed. Defendant’s cross appeal dismissed.

 The record does not reflect what answer, if any defendant made to his mother’s query, but it is significant that he recounted to his wife that she "asked [him] the same thing.” It thus would appear that defendant had a conversation with his mother regarding his lack of remorse, which is the very subject matter now claimed to be protected by the marital privilege, there being no issue as to whether or not he shot and killed the victim.