THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THOMAS DAGHITA, Appellant.

Argued February 21, 1949; decided April 20, 1949.

*Victor Levine* for appellant. The trial court erred in permitting defendant's wife to testify for the prosecution concerning defendant's acts at their home. (*People* v. *Woltering,* 275 N. Y. 51; *People* v. *Grossinger,* 233 Mich. 625; *Perry* v. *Randall,* 83 Ind. 143.)

*Frederick B. Bryant, District Attorney,* for respondent. There was no reversible error in permitting defendant's wife to testify for the prosecution. (*Smith* v. *State,* 198 Ind. 156; *State* v. *Dixson,* 80 Mont. 181; *State* v. *Snyder,* 84 Wash. 485; *Millspaugh* v. *Potter,* 62 App. Div. 521; *Weston* v. *Weston,* 86 App. Div. 159; *People* v. *Truck,* 170 N. Y. 203.)

CONWAY, J. The defendant has appealed by permission of a Judge of this court from the unanimous affirmance by the Appellate Division of a judgment of the County Court of Tompkins County convicting him of the crimes of grand larceny in the first degree and of criminally concealing and withholding stolen property.

The first count of the indictment charged that the defendant stole from Montgomery Ward & Co., Inc. (hereinafter referred to as Montgomery) in Ithaca, New York, property having a value of approximately $1,000. The second count charged him with the crime of criminally concealing and withholding stolen property in violation of section 1308 of the Penal Law of the State of New York in that he willfully and unlawfully concealed and withheld from Montgomery certain merchandise of the value of approximately $1,000 which he knew had been stolen from the company.

Defendant was a police officer in the city of Ithaca. One Borries was a janitor at the store of Montgomery located in the same city. He testified that one morning in the winter of 1946–1947 the defendant came to his home about one o'clock to inform him that the door at the store was open. The defendant drove him to the store, he locked the door and the defendant drove him home again. A few days later, while Borries was in the basement, the defendant knocked on the front window of the store. He said that he told the defendant he could not come in and that no one was permitted in but defendant replied that he was an officer of the law and did come in and walk about the basement. In the summer of 1947, Borries said he met

defendant while on his way to work. His hours for work began shortly after two o'clock in the morning. The defendant drove him to the store in his truck and Borries entered. After parking, the defendant knocked on the door and Borries let him in. The defendant went to the basement, took merchandise off the counters and put it in pasteboard boxes. He then put the boxes in his truck. Again, on another occasion, Borries met the defendant while the latter was driving a police car in uniform and was taken to work by him. That occurred six or seven times. Each time Borries went in through the front door and the defendant went to the parking space in the rear of the store before entering and appropriating merchandise.

The first question presented for our consideration arises by reason of the fact that the District Attorney called the wife of the defendant as a witness as a part of his direct case. When an attempt was made to examine her as to knowledge which was communicated to her by her observance of the defendant's acts in their home, counsel objected upon the ground that a confidential communication between husband and wife was sought to be elicited. The court ruled that she might not testify to oral communications between herself and her husband but that she might testify " to acts of his which she observed." To that ruling exception was taken by defendant.

Mrs. Daghita then testified that she first observed the defendant bringing articles from Montgomery into their home from his own car or from the police car in August of 1947; that some of them were rugs, spreads and other merchandise displayed as exhibits in the courtroom; that at the same period he brought merchandise home three or four times a week at between four and five o'clock in the morning; that such articles were contained in cardboard boxes and when he carried them in, he took them into the cellar, bringing them upstairs later during the day; that she made use of some nightdresses and of three children's dresses; that in September the defendant brought home three jackets, two pillows and ten bath towels; that he brought home some paint and painted the house in August and September; that he brought home seat covers for the automobile; that some of the articles he stored in his bedroom and under his bed. She was then asked about each of four of her children by name and as to the stolen articles of clothing which each received from Montgomery and wore.

At common law, the wife of a prisoner was not a competent witness in a criminal action or proceeding against him. In 1867 (L. 1867, ch. 887, § 2) a wife was made a competent witness for or against her husband in civil actions and proceedings only. (*Wilke* v. *People,* 53 N. Y. 525.) In 1876 (L. 1876, ch. 182, § 2) a husband or wife was permitted to be examined as a witness *on behalf* of the other in all criminal trials. (*People* v. *Hovey,* 29 Hun 382, affd. 92 N. Y. 554.) Under that statute, she was not permitted to testify *against* her husband even though she were willing so to do. (*People* v. *Houghton,* 24 Hun 501; *People* v. *Briggs,* 60 How. Prac. 17 [1880].) The applicable rule is now embodied in section 2445 of the Penal Law (derived from Penal Code, § 715; L. 1881, ch. 676), which reads as follows: " *Husband or wife as witness.* The husband or wife of a person indicted or accused of a crime is in all cases a competent witness, on the examination or trial of such person; but neither husband nor wife can be compelled to disclose a confidential communication, made by one to the other during their marriage." The rule affecting husband and wife at common law had its foundation " in the identity of their rights and concerns, the interest of civil society, and the sanctities of the marriage relation," and it was enforced by the courts with much strictness. (*People* v. *Houghton, supra,* p. 501.) The object was " that the most entire confidence may exist between them, and that there may be no apprehension that such confidence can, at any time, or in any event, be violated, so far, at least, as regards any testimony or disclosure in a court of justice." (*Chamberlain* v. *People,* 23 N. Y. 85, 89.)

The three statutory modifications mentioned, and there has been no additional one in nearly seventy years, were in derogation of the common law, should be strictly construed and should be permitted to accomplish nothing beyond what was fairly intended. (*People* v. *Houghton, supra.*) Competency of husband and wife as witnesses has been effected and enlarged but the essential nature, meaning and implications of the clause " a confidential communication, made by one to the other during their marriage " has not been altered.

The applicable general rule which we have applied in this State and which has the support of the weight of authority throughout the United States, is that the term communication means more than mere oral communications or conversations

between husband and wife. It includes knowledge derived from the observance of disclosive acts done in the presence or view of one spouse by the other because of the confidence existing between them by reason of the marital relation and which would not have been performed except for the confidence so existing. An act may communicate knowledge to the known observer and repose a confidence in him as clearly and unmistakably as if accompanying descriptive words were uttered. (*People* v. *Woltering,* 275 N. Y. 51, 57, 61; *Smith* v. *State,* 198 Ind. 156; 58 Am. Jur., Witnesses, § 385; 70 C. J., Witnesses, § 520.)

Certainly, the wife's knowledge gained by observance of defendant's conduct in bringing home stolen property in the early morning hours and storing it in different parts of the house and more particularly under his bed was the result of a confidential communication on his part. It cannot be supposed that the defendant would have so conducted himself except in reliance upon the free and unrestrained privacy of the marital relation and the socially desirable confidence which exists, and should exist, between husband and wife. The record makes plain that defendant made no effort to conceal or disguise his conduct at his home from his wife. He was, in a word, confiding in her the information disclosed by his conduct. "Its nature, and the relation of the parties, forbade the thought of its being told to others, and the law stamped it with that seal of confidence which the parties in such a situation would feel no occasion to exact." (*Warner* v. *Press Pub. Co.,* 132 N. Y. 181, 186.) Clearly, if defendant had told his wife that he was bringing home goods from Montgomery under the circumstances disclosed here, she could not have been compelled to testify as to such statement over his objection. (*People* v. *Wood,* 126 N. Y. 249, 271.) That being so, she may not be compelled to testify to conduct transpiring in her presence in the home which clearly, though not orally, communicated the same fact to her. Whether, if ever, accompanying exculpatory statements on the part of the actor would render his conduct admissible is dubious but at any rate is not presented here.

The judgment here may not be affirmed under section 542 of the Code of Criminal Procedure, since the error here was not technical but affected the substantial rights of the defendant.

After Mrs. Daghita had been compelled to disclose the confidential communication made to her by her husband and outlined above, a verdict of guilt was assured to the prosecution which had called her as a witness.

The judgments of conviction should be reversed and a new trial ordered.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and BROMLEY, JJ., concur.

Judgments of conviction reversed, etc.