THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* KENNETH DUDLEY, Appellant.

Fourth Department, February 15, 1968.

*Francis R. Belge* for appellant.

*Frank A. Gualtieri, Jr., District Attorney (Lucien Ali* of counsel), for respondent.

DEL VECCHIO, J. Defendant was convicted of murder in the first degree. His guilt was established beyond a reasonable doubt by his oral admissions and a 17-page voluntary confession in question and answer form supported by independent additional proof that the deceased was murdered. This satisfies the demands of section 395 of the Code of Criminal Procedure. (*People* v. *Louis,* 1 N Y 2d 137.) It is significant that Mrs. Vella's body bearing marks of murder was found at the place indicated by the defendant in his undisputed confession. In *People* v. *Roach* (215 N. Y. 592, 600) the court said: "There must be evidence in addition to the confession to prove the *corpus delicti,* but when \* \* \* the *corpus delicti* is proved by independent evidence, and the defendant has voluntarily confessed his guilt, a case for the jury is made out, and a conviction based upon such testimony is warranted in law."

The area of disagreement between the majority and the dissenting Justices centers upon two issues: (1) whether it was reversible error to receive in evidence portions of the testimony of defendant's wife as confidential communications, and (2) whether it may have been prejudicial for the prosecution to call as a witness the Justice of the Peace before whom defendant signed his confession.

With respect to the wife's testimony: The defendant concedes that his wife could properly testify to his acts and words while Mrs. Vella was conscious as not being privileged, citing *People* v. *Ressler* (17 N Y 2d 174). It was there stated (p. 179): "The conversation between defendant and his wife in the presence of Maxwell Slick, before he was slain, is admissible over the objection that it was a privileged communication (*People* v. *Daghita,* 299 N. Y. 194) inasmuch as privilege does not attach while a third person is present (*People* v. *Melski,* 10 N Y 2d 78; *People* v. *McCormack,* 278 App. Div. 191, affd. 303 N. Y. 782)."

It is well settled that not all communications between husband and wife, when alone, are confidential. Only those which have been induced by the marital relation enjoy a privilege. (*Park-*

*hurst* v. *Berdell,* 110 N. Y. 386.) The record shows that at the time of the murder the defendant threatened to kill his wife if she disclosed what she had seen. This is strong evidence that he himself was not then relying on any confidential relationship to preserve the secrecy of his acts. This alone should be enough to remove the communications from the protection of the privilege. (Cf. *People* v. *Melski,* 10 N Y 2d 78, 81.) Furthermore, upon all the evidence presented at the preliminary hearing to determine whether any of her testimony would be admissible, the court could properly find as a question of fact that the presumption of confidentiality had been rebutted. There was ample proof that the defendant had severely abused and mistreated his wife to show that the marriage was held together solely by fear and domination. This, together with his statement that '' if you get out of line again, this same thing will happen to you '' supports the conclusion that none of defendant's acts or statements at the time of the murder was induced by the marital relationship. (*Poppe* v. *Poppe,* 3 N Y 2d 312, 315.)

In any event, during the trial defense counsel constantly objected to all of the wife's testimony, but now contends that only that portion revealing what defendant said or did after Mrs. Vella was rendered unconscious was inadmissible. That testimony occupies only five pages of the record and the facts therein stated also appear in defendant's 17-page confession. The testimony by defendant's wife concerning what occurred both before and after Mrs. Vella was rendered unconscious did not vary materially from the facts stated by the defendant. As a matter of fact, his full and detailed written confession contained many items covering his acts and conversations with the deceased on the night of the homicide not mentioned in the wife's testimony, some of which were corroborated by testimony of other witnesses. Moreover, it was the defendant himself who marked a map of the area to show where he had left and covered the victim's body. It was with the aid of this map that the body was found 14 years after it had been buried.

We conclude that this conviction does not depend upon the testimony of defendant's wife and would affirm even if a portion thereof were inadmissible, upon the ground that under all the circumstances the error was harmless as merely admitting repetitious evidence which did not materially add to the People's case.

In *People* v. *Ferola* (215 N. Y. 285) there were admitted in evidence two confessions made by the defendant, one on her examination at the Coroner's inquest after she had been charged with the homicide and the other to the District Attorney after

the inquest. Without either of these confessions the People's case would have been insufficient to sustain the conviction. The court held that while her attendance as a witness before the Coroner was compulsory as a matter of law and in violation of her constitutional rights, since her voluntary statement to the District Attorney was admissible, the receipt in evidence of the prior statement did not require a reversal. The court said that although there were immaterial variances, the two statements were substantially alike in all essential respects, and therefore the admission in evidence of both statments was not prejudicial to the defendant, and the conviction was affirmed.

With respect to the confession having been signed before a Justice of the Peace: Since an objection on this ground was not raised at the trial or on this appeal, ordinarily it would not now be considered. (*People* v. *Hicks*, 287 N. Y. 165, 174.)

It does appear that while defendant and his wife were confined in jail in the State of Virginia the wife gave the police a statement to the effect that defendant had killed a woman in Syracuse, New York. After advising him of his right to counsel, his right to remain silent and that anything he said might be used against him, the police gave the wife's statement to defendant who, after reading it, said the facts stated therein were generally true but he wanted to give his version of what occurred on the night of the killing. It was after this oral admission that the confession in question and answer form was typed out. Defendant read it, made several corrections and initialed them. Defendant was then taken before a Justice of the Peace who played no part in the making of the statement but merely acted as a Notary Public when defendant signed it on the trunk of the officer's car in the driveway at the home of the Justice of the Peace.

Before the commencement of the trial the court conducted a hearing to determine whether defendant's oral admissions and his written confession were voluntary; at that time it determined that they had been voluntarily made and were admissible in evidence. The issue of voluntariness was subsequently submitted to the jury and implicit in its verdict is a finding of voluntariness beyond a reasonable doubt.

Upon the trial there were no objections to the testimony of the Justice of the Peace on the ground that defendant had signed the statement before him and no questions were asked of him on cross-examination. When the People offered the written confession in evidence defendant objected, on the ground that " the prosecution has failed to prove beyond a reasonable doubt that

this statement was not given without coercion or force or duress, or in violation of his constitutional rights." It would seem that this objection has not saved the question for review. (Cf. *People* v. *Ross,* 21 N Y 2d 258.)

We recognize that the Court of Appeals has disapproved the signing of confessions before a judicial officer. However, in this case defendant did not dispute or repudiate the contents of the confession nor deny the testimony of the witnesses concerning his oral admissions. Under these circumstances the technical error in having the defendant sign before a Justice of the Peace instead of a Notary Public does not necessitate a reversal. (Cf. *People* v. *Randall,* 9 N Y 2d 413, 425.)

In *People* v. *Foley* (8 N Y 2d 153), *People* v. *Oakley* (9 N Y 2d 656) and *People* v. *Warner* (9 N Y 2d 670) the convictions were reversed because the confessions had been obtained either in the courtroom or in the office of the Justice of the Peace during or prior to arraignment on charges before him. Furthermore, each defendant in these cases testified that the facts recited in his statement were not true. Certainly, under those circumstances, the defendant would be prejudiced because the jury might well regard the fact that the statement was signed before a judicial officer as a guarantee of its truthfulness. In our case, defendant did not take the stand and offered no proof that the assertions in the statement were not true.

Because of the conclusiveness of defendant's guilt based upon his oral admissions and written confession supported by corroborative evidence, the allegedly improperly admitted evidence could not have affected the determination of the jury and should be disregarded under section 542 of the Code of Criminal Procedure. (*People* v. *Nunziato,* 233 N. Y. 394.)

Accordingly the judgment of conviction should be affirmed.

GOLDMAN, J. (dissenting). In this appeal from a murder in the first degree conviction, the principal claim of error is that defendant's wife should not have been permitted to testify to the circumstances surrounding the alleged killing of the victim. From the outset, defense counsel constantly objected to receipt of wife's testimony on the ground that these were confidential communications made by one to the other during their marriage and, therefore, privileged. (Penal Law, § 2445; CPLR 4502, subd. [b].)

Prior to the trial, defendant and his wife had been convicted in Virginia of murder in the second degree, for which he received a 20-year sentence and she 10 years. In April, 1961, after their

arrest in Virginia, the wife related to authorities facts concerning the murder by her husband of a woman in Onondaga County in 1949. Confronted with his wife's statement, defendant made a full and detailed written confession admitting the murder and substantially corroborating his wife's story. He was thereafter indicted and tried for this crime in Onondaga County. A pretrial hearing on the admissibility of the confession was had and the court found the confession to be voluntarily made.

In order to rule on the competency of the wife to testify for the prosecution, the trial court, without the presence of the jury, permitted the prosecutor and defense to question the wife at length about her relationship with her husband. The adoption of this procedure by the court under the circumstances was justified and proper. That examination elicited the fact that the parties had been married in 1934, more than 30 years before the trial of this case. The wife testified that after the birth of her first child, her affection for her husband lessened because of his neglect of her and his cruelty to her and their child. Notwithstanding this, she continued to live with her husband and to have regular sexual relations with him right up to 1961 when they were arrested in Virginia. At no time did she ever complain to the authorities about the conduct of her husband or of her alleged fear of him. Her statement that she " was afraid of her husband " after the murder of the Onondaga woman in 1949 is difficult to square with the fact that she never separated from him, that she lived daily with him as husband and wife and gave birth to 6 more of his children, making a total of 10 during their married life. Her silence and inaction during all the years he allegedly beat her and their children, broke their children's arms and legs and starved them, can only be evidence of greater affection for her husband than for her children. Not even after the deaths of two of their children while in Syracuse and the death of the third child in Virginia, for which both spouses were convicted, did the wife ever make complaint to the police or other public officials. Her statements that her affection for her husband had greatly diminished are against the weight of the evidence when contrasted with her relationship with her husband during the 30 years that she allegedly changed her affection from love to hate. It is significant that even after the parties were arrested in Virginia her letters to her husband and her actions were those of a normal if not a devoted wife. Would a wife who hated her husband be " hugging him and kissing him ", as she admitted she had done when she saw him in the Virginia prison? In the letters she wrote to him in the prison she

expressed concern for his health and asked him to take care of himself. Furthermore, she repeated that "my feelings toward you will always be the same, Ed, and I will always pray for you no matter what. Love, Irene." These letters of concern and affection for the defendant spoke louder than the negative expressions of the wife on the witness stand as to her affection for her husband.

Would the defendant have assaulted and killed the victim if a third party rather than his wife were present? "It cannot be supposed that the defendant would have so conducted himself except in reliance upon the free and unrestrained privacy of the marital relation and the socially desirable confidence which exists, and should exist, between husband and wife." (*People* v. *Daghita,* 299 N. Y. 194, 199.) This restraint on the wife's competency to testify as to "communication, made by one to the other during their marriage" (Penal Law, § 2445) "means more than mere oral communications or conversations between husband and wife. It includes knowledge derived from the observance of disclosive acts done in the presence or view of one spouse by the other because of the confidence existing between them by reason of the marital relation and which would not have been performed except for the confidence so existing. An act may communicate knowledge to the known observer and repose a confidence in him as clearly and unmistakably as if accompanying descriptive words were uttered." (*People* v. *Daghita, supra,* pp. 198–199.) Even if it were to be held that the conversations between defendant and his wife and his actions in her presence were not privileged while the victim was alive and conscious (*People* v. *Ressler,* 17 N Y 2d 174), the privilege attached once the defendant had beaten the victim into unconsciousness. After that point in time no third party was present, after which the defendant stomped upon his victim and crushed out what life remained, if any, after unconsciousness. Furthermore, the privilege would attach to all the wife's testimony as to the disposition of the body and the incriminating acts of defendant for several hours immediately after the murder. In *People* v. *Oyola* (6 N Y 2d 259, 265) admissions made by a husband to his wife concerning the crime were held confidential and therefore inadmissible even though the spouses were separated at the time. It is clear that a substantial portion of the wife's testimony, as to the commission of the crime, was confidential and defendant's objection to its receipt should have been sustained. Notwithstanding the other proof of defendant's guilt, the error in receiving that part of the wife's testimony which was privileged requires reversal and a new trial.

Although appellant has not raised this issue, there is another facet of the trial which may well have been prejudicial and may have affected defendant's right to a fair trial. The prosecution produced as a witness one James L. King, who was identified as " a judicial officer of the State of Virginia ". He testified that he was " Justice of Peace of the Henrico County Court " and as a " judicial officer " was empowered to take acknowledgments in the State of Virginia. The witness identified " Exhibit 6 " as the " statement that was sworn to under oath by Mr. Dudley in my yard " and was signed in his presence. Furthermore, the Justice asked defendant if " what was contained therein was the truth " and he acknowledged that it was. Defendant's confession was then offered in evidence and objection was duly made but solely on the ground that the prosecution had failed to prove beyond a reasonable doubt that the statement was voluntarily made. The objection was overruled and the exhibit admitted and read to the jury.

The Court of Appeals has recently ordered new trials in three cases in which defendants' statements were acknowledged and sworn to before Justices of the Peace. In *People* v. *Foley* (8 N Y 2d 153, 155) the court stated that " Whether or not the use at the trial of the confession sworn to before the Justice of Peace was ' testimonial compulsion ' in the strict sense, its introduction in evidence in a capital case was under all the circumstances so contrary to our concepts of proper trial practice that a new trial is required." The same criticism of this practice was repeated in *People* v. *Oakley* (9 N Y 2d 656, 657) where a new trial was ordered for the reason that " We disapprove the taking of or the swearing to confessions before any judicial officer." In *People* v. *Warner* (9 N Y 2d 670, 671) the Court, citing *Oakley,* again reversed where " The Justice of the Peace placed defendant under oath and asked defendant if he swore that such confession was true." In *Foley* and *Warner* the execution of the statements took place in the Magistrates' courtrooms while in *Oakley* and the instant case the execution occurred at the homes of the Justices of the Peace. In each case, however, " testimonial compulsion " resulted because the statements " had been sworn to before a judicial officer " (*People* v. *Foley, supra,* p. 155).

The majority opinion concludes that defendant's guilt has been amply demonstrated by his admissions and confession. Although we agree that this may be true, we must remind ourselves that " Vicious though the crime was, convincing though the evidence of guilt may seem to be, we could affirm only if we were to announce a doctrine that the fundamentals of a fair trial

need not be respected if there is proof in the record to persuade us of defendant's guilt. We are not prepared to announce such a doctrine.'' (*People* v. *Mleczko*, 298 N. Y. 153, 163.)

WILLIAMS, P. J., and HENRY, J., concur with DEL VECCHIO, J.; GOLDMAN, J. dissents and votes to reverse and grant a new trial, in opinion, in which BASTOW, J., concurs.

Judgment affirmed.