Michael Kern, J.
The defendant, charged with the murder of his infant child, asks leave to reargue the motion for inspection of the Grand Jury minutes. In support thereof he urges his contention that the testimony of his .spouse before the Grand Jury, relating to disclosive acts committed in her presence, is inadmissible under section 249 of the Code of Criminal Procedure as a disclosure of ‘ ‘ confidential communications ”. He further contends that the indictment cannot stand without the wife’s allegedly incompetent testimony and that, therefore, it should be dismissed.
Examination of the testimony before the Grand Jury discloses that, in the court’s opinion, there was sufficient testimony, in addition to that given by the defendant’s spouse, of so inculpatory a nature as to justify the indictment. Moreover, the court is of the opinion that the circumstances disclosed do not come within the purview of section 2445 of the former Penal Law which, it is to be noted, was omitted from the revised Penal Law which became effective before the date of the alleged commission of the crime charged in the indictment. It is now a part of CPLR 4502.
Disregarding the fact that there was present, at the time of the commission of the acts complained of, another person, the five-year-old child of the defendant, it is the court’s opinion that the statute was never intended to encompass such a situation as is here presented. As Mr. Justice Stoke observed in Wolfe v. United Sientes (291 U. S. 7, 14 [1934]): “ The basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails. See Hammons v. State, 73 Ark. 495, 500 * * * Sexton v. Sexton, 129 Iowa 487, 489 (Emphasis added.)
The Court of Appeals of the State of New York, in People v. Daghita (299 N. Y. 194), described a “ confidential communication ” as “ knowledge derived from the observance of disclosive acts done in the presence or view of one spouse by the other because of the confidence existing between them by reason of the marital relation and which would not have been performed except for the confidence so existing.” (Emphasis added.)
The testimony relating to the events surrounding and during the commission of the acts which resulted in the death of the *211 child of this marriage cries out against a conclusion that the defendant entertained any hope or expectation that his spouse would remain silent. It severely strains the imagination to even suppose that one who is engaged in beating to death their infant child, in the presence of his spouse, might have relied upon any trust, confidence or intimacy, ordinarily inherent in a marriage relationship, as the basis for a claim of privilege (cf. People v. Melski, 10 N Y 2d 78, 81). An interpretation so immature is repellent to any sense of logic or justice. The statute, intended to preserve and strengthen the marital status, and which excepts from its applicability assaultive acts committed by one spouse upon the other, would thus be turned into a device to conceal and suppress acts which, in their very nature, serve to destroy that very relationship.
There is a vast basic difference between the situation presented in Daghita (supra) and the facts in the instant case. In Daghita, the act of concealing stolen merchandise in the spouse’s home, in her presence, was in no way directed towards the status or the perpetuation of the marital relationship. The privilege designed and intended to encourage such relationship should not operate to permit the act of one spouse towards the other or towards her offspring — an act which could have no meaning but to strike at or destroy the very relationship which the statute sought to perpetuate. The reasoning of Judge Fuld in Poppe v. Poppe (3 N Y 2d 312, 315), although stemming from a matrimonial action, is particularly applicable to the situation at bar: 1 ‘ Depending as it does upon the character of the communication, as well as upon the relationship of the parties, it may be impossible to formulate an all-embracing definition or an infallible guide. It is, however, perfectly clear that the statute was never designed to forbid inquiry into the personal wrongs committed by one spouse against the other, or that it was ever intended to label confidential a communication aimed at destroying the marital relation ”. (Emphasis added.)
It is to be assumed, therefore, that not every husband-wife communication is to be included within the category of those into which inquiry is forbidden (People v. Dudley, 29 A D 2d 232; Parkhurst v. Berdell, 110 N. Y. 386). The purport of Judge Ftjld’s language is to be interpreted as holding* that confidentiality of a husband-wife communication is to be presumed unless such presumption is rebutted by “the character of the communication ’ ’ itself. This is apparent as well from his observation that (p. 318) “ it would be a paradox to treat as confidential a communication whose unequivocal purpose *212 and inevitable consequence were to destroy all confidence that may have existed. ’ ’
In any event, while the court grants the defendant’s motion for leave to reargue, upon such reargument its original decision denying the motion to inspect is fully adhered to.