THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIAM FIELDS, Appellant.

First Department, February 8, 1972.

*Robert J. Egan* of counsel (*Robert Kasanof,* attorney), for appellant.

*David Otis Fuller, Jr.,* of counsel (*Michael R. Juviler* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

STEUER, J. The defendant, whose record leaves little to recommend him, was convicted of assault in the second degree for the wounding of one Sheila Yarborough by means of a pistol shot. Following that conviction he pleaded guilty to manslaughter in the first degree for the killing of Sidney Yarborough. On the assault charge he received an indeterminate sentence of seven years and on the plea to manslaughter an indeterminate sentence of ten years with a minimum of three years, the sentences to run concurrently.

We find no error in regard to the manslaughter conviction and that conviction is affirmed.

On the trial for assault the People called as a rebuttal witness Alice Fields, the wife of the defendant. She testified to a telephone call received from defendant shortly after the shootings in which he told her of them and asked permission to come to her apartment to stay for a while. The permission sought was obviously because the couple had been living apart for several months and defendant was in fact living with another woman. She also testified to seeing a revolver of the kind used in the shootings in defendant's possession some weeks before the shootings. We believe that this testimony could have had a material effect on the verdict.

CPLR 4502 (subd. [b]) provides: " A husband or wife shall not be required, or, without consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage."

This section and its predecessor (Civ. Prac. Act, § 349) were parallel to former section 2445 of the Penal Law but it is even more restrictive in its terms. The former section provided that the spouse could not be compelled to reveal such communications, while the present statute does not allow the spouse to do so.

The statute is in derogation of the common law (*People* v. *Daghita,* 299 N. Y. 194, 198; *People* v. *Houghton,* 24 Hun 501) in that it allows for possible exceptions to the common-law rule for the unqualified incompetency of a spouse as a witness (8 Wigmore, Evidence [3d ed.], § 2333).

As the law has developed communication between spouses is presumed to have been conducted under the mantle of confidentiality. There appear to be, however, at least three recognized grounds for the destruction of this protection:

(1) Where the criminal activity is aimed against the other spouse (cf. *Poppe* v. *Poppe,* 3 N Y 2d 312).

(2) Where the communication is made in the presence of third parties (*People* v. *Melski,* 10 N Y 2d 78; *People* v. *McCormack,* 278 App. Div. 191).

(3) Where the defendant in communicating relied on other grounds, specifically enjoining silence by fear (*People* v. *Dudley,* 24 N Y 2d 410).

To these the District Attorney seeks to add a fourth exception —where the parties are not living together in the milieu of the normal marriage relationship. The basis for this argument is that the purpose of the privilege is to preserve the marital relationship, and where the relationship no longer has a genuine existence no purpose remains. The difficulty with the situation is a pragmatic one. It calls upon the Trial Judge in determining whether the proposed testimony is admissible to decide whether the marriage is viable, that is, whether there is a possibility of reconciliation. And while there are decisional hints that this ground of exception might attain recognition, the invariable holding has been that the possibility of reconciliation has not been negated (see *People* v. *Oyola,* 6 N Y 2d 259, 265). And this would appear almost inevitable from the very fact that in the moment of stress he sought to communicate with his wife. We further believe that whether the public policy engendering the statutory privilege is to be best furthered by limiting its application to such spouses whose marital relationship meets certain tests is peculiarly of legislative concern. And we invite the attention of the Legislature to its consideration.

Turning now to the recognized exceptions, it is clear that the first two have no application to the facts of the case here. Consideration of the third ground requires a more detailed account of the testimony. Mrs. Fields testified that she received a telephone call from the defendant in the early morning hours of the day following the shooting. In that call he told her that he had shot and killed Sidney and wounded Sheila Yarborough and asked if he could come to her apartment. She told him he could.

When he came he asked her if she knew why he had come. She acknowledged that she did — that he had come to kill' her. He admitted that that was his purpose, recalling to her that if he were ever sent back to prison, he "wasn't going to leave you out here." He then described the events leading to the shootings, at the same time exhibiting the gun used, and thereafter went to sleep. She took the opportunity to go to the police. When she returned with a detective, he was gone. She also testifiel that he had visited her some few weeks prior to this, at which time he had had the same gun in his possession. No other facts as to this prior visit were brought out.

This testimony falls far short of the foundation required. He never enjoined silence. The threat was not to prevent her from revealing what she knew; it had nothing to do with it. Either from jealousy or from some undefined feeling that she should share his misfortune in the event of his again being incarcerated, he stated an intent to kill her. But it certainly had nothing to do with what he had told her and the threat was quite operative even if he had told her nothing at all. Moreover, the repeated visits and the depth of feeling revealed show that this marriage was far from dead.

It is also suggested that this testimony did not affect the verdict. We do not so regard it. However, the best test would be whether he will be convicted without that testimony.

Judgment entered July 16, 1970 (NADEL, J.) convicting defendant of manslaughter and assault in the second degree (MARTINIS, J.) should be modified on the law by reversing the conviction for assault in the second degree and remanding the case for a new trial on this charge; and otherwise affirmed.

KUPFERMAN, J. (dissenting in part). While the discussion is academic as to this defendant, because we unanimously affirm the longer of the concurrent sentences, I must dissent from the determination as to the marital privilege and on that aspect alone.

There is no general incompetency in this State for one spouse to testify against the other. It applies only to statements " that are induced by the marital relation and prompted by the affection, confidence and loyalty engendered by such relationship " (Poppe v. Poppe, 3 N Y 2d 312, 315).

That the presumption of confidentiality may be rebutted is clear from People v. Oyola (6 N Y 2d 259, 265 [1959]) and Poppe v. Poppe (supra).

The majority here disqualifies the testimony purely on the technical basis of marriage. There is no germ of a relationship, other than that in derogation of the marriage, to otherwise sus-

tain such a result. The marriage certificate here, as Samuel Goldwyn once said about an oral contract, is not worth the paper it is written on.

There is no need to go into the subject of fault in determining that the so-called marriage here has no sanctity (cf. *Gleason* v. *Gleason*, 26 N Y 2d 28, 39 [1970]).

MARKEWICH, J. P., and MURPHY, J., concur with STEUER, J.; KUPFERMAN, J., dissents in part in an opinion, in which NUNEZ, J., concurs.

Judgment, Supreme Court, New York County, rendered on July 16, 1970, modified, on the law, by reversing and vacating the conviction for assault in the second degree and remanding the case for a new trial on that charge; and otherwise affirmed.