■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRE FEDIUK, True Name ANDRY FEDIUK, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Dubin, J.), rendered May 20, 1980, convicting him of murder in the second degree and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law, and new trial ordered. The findings of fact have been considered and are determined to be established.

The admission of the contents of defendant's telephone conversation with his wife violated his marital privilege (CPLR 4502, subd [b]). The fact that the parties were separated did not destroy the privilege herein, since defendant obviously clung to

the illusion that they could still reconcile (see *People v Fields,* 38 AD2d 231, affd 31 NY2d 713; *People v Oyola,* 6 NY2d 259).

The issue of whether defendant acted under extreme emotional disturbance was closely contested. The wife's testimony concerning the telephone conversation was crucial to the prosecution's psychiatrist's evaluation of defendant's mental state at the time of the incident. This testimony was clearly prejudicial to defendant and may not be deemed harmless.

Accordingly, reversal is required. We have reviewed the defendant's other contentions and find them to be without merit. Bracken, J. P., Brown and Niehoff, JJ., concur.

Weinstein, J., dissents and votes to modify the judgment appealed from by reducing the conviction of murder in the second degree to one of manslaughter in the first degree, and thereupon to remit the matter to the Supreme Court, Queens County, for resentence on that count, in accordance with the following memorandum, and to affirm the judgment in all other respects.

As per my interpretation of the proof, defendant succeeded in establishing, by a fair preponderance of the evidence, that in shooting his wife's paramour, he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation under the circumstances as he perceived them to be (Penal Law, § 125.25, subd 1, par [a]). The long-term overwhelming stress caused by the rejection and unfaithfulness of his wife and the forced separation from his children to whom he had always been a devoted father clearly constituted an extreme emotional disturbance for defendant, a classic example of that "significant mental trauma [which] has affected a defendant's mind for a substantial period of time, simmering in the unknowing subconscious and then inexplicably coming to the fore" (*People v Patterson,* 39 NY2d 288, 303, affd 432 US 197).

Defendant's stress and trauma came to the fore on October 3, 1979 with the fatal shooting of Walter Cassella. Defendant and his wife had been separated since May, 1979. Just prior to the subject incident, defendant's wife told him that she was taking the children on a short visit to her aunt in up-State New York. Defendant expressly inquired as to the duration of the proposed trip since he was anxious to resume visiting with his children. Contrary to the wife's representation, she and the children flew to Minnesota to meet Cassella. They returned some three and one-half weeks later in Cassella's truck. During this time, defendant did not know where his family was or whether they would return. Prior to October 3, 1979, defendant had no knowledge of the relationship between his wife and Cassella. Defendant became increasingly upset as a result of learning that his

wife had been away with Cassella and reading in her diary that Cassella was the only man whom she had ever loved. The situation was further aggravated by the wife's verbal confirmation that she loved Cassella and by the sight of them embracing on the street.

The testimony of Dr. Robert Goldstein, the defense's expert psychiatrist, established that defendant lost self-control and was "under the influence of a very extreme emotional state" at the time he shot Cassella. Although the People's expert concluded that defendant had not acted under extreme emotional stress, he conceded that defendant's fear of losing his children was particularly traumatic inasmuch as his relationship with them was crucial to his emotional stability.

In my view, although defendant's emotional outpouring surely included strong feelings of jealousy and anger, his acts, particularly in view of his relationship with his children and his fear of losing them, indicate a mental state clearly more complex and extreme than mere aggression. The instant situation is patently distinguishable from *People v Casassa* (49 NY2d 668, cert den 449 US 842), wherein the defendant had developed a peculiar obsession with his victim, a casual acquaintance who rejected his advances. This rejection precipitated a bizarre series of actions on the part of the defendant, who was unable to escape his fantasy and accept the reality of the situation, culminating in the fatal stabbing of the object of his affections. In that instance, the murder was "the result of [the] defendant's malevolence rather than an understandable human response deserving of mercy" (*People v Casassa,* 49 NY2d 668, 680-681, *supra*).

The instant case is totally devoid of any such malevolence on the part of defendant. Rather, this defendant's conduct, while far from being commendable or worthy of emulation, was, to a great extent, an understandable human response deserving of mercy. Accordingly, I conclude that the jury's rejection of the affirmative defense of extreme emotional disturbance was against the weight of the credible evidence (cf. *People v Morrison,* 95 AD2d 868). I therefore vote to modify the judgment by reducing defendant's conviction of the crime of murder in the second degree to a conviction of manslaughter in the first degree, and to remit the matter to the Supreme Court, Queens County, for resentencing on that charge.

Defendant's contention that the prosecution's failure to present to the Grand Jury the affirmative defense of extreme emotional disturbance rendered the entire Grand Jury proceeding defective is entirely devoid of merit. The Court of Appeals has recently held that the District Attorney is free to seek an

indictment for the highest crime which the evidence will support and is only required to present proof of exculpatory defenses which, if believed, would result in a finding of no criminal liability. The prosecutor is under no obligation to present evidence of mitigating defenses to the Grand Jury inasmuch as consideration of such defenses would not prevent unfounded criminal accusation but would, at best, reduce the degree of the crime charged (*People v Valles*, 62 NY2d 36, 39). Since the defense of extreme emotional disturbance is a mitigating rather than an exculpatory defense, the *Valles* decision is dispositive of the issue raised.

I do not adhere to the majority's determination that the trial court's admission of the contents of defendant's telephone conversation with his wife violated his marital privilege. While a confidential communication between husband and wife is privileged if it is induced by the speaker's absolute confidence in the marital relationship (CPLR 4502, subd [b]; *People v Melski*, 10 NY2d 78, 80), I am of the view that the state of the marriage is relevant to the question of whether or not the subject communication was prompted by the marital bond (5 Weinstein-Korn-Miller, NY Civ Prac, par 4502.21, p 45-85). While the mere fact that the spouses have been living apart does not permit the denial of the protection of confidentiality (*People v Fields*, 38 AD2d 231, 233, affd 31 NY2d 713; *People v Oyola*, 6 NY2d 259, 265), the facts of this case do not reveal any real attempt at reconciliation despite defendant's alleged declaration of continued love. Indeed, the circumstances clearly militate against any hope of reconciliation.

Although the Fediuks were still legally married at the time of the subject telephone communication, defendant's words were not induced by his absolute confidence in the marital relationship. Prior to the shooting, defendant's wife had obtained an order of protection and had once taken refuse in a Battered Women's Association. At the time of their separation, Mrs. Fediuk made it clear to defendant that she no longer loved him and that there was no possibility of reconciliation. Just prior to the shooting, defendant struck his wife in the head and threatened to kill her. Moments before shooting Cassella, defendant aimed his rifle at Mrs. Fediuk, who was shielding herself with her younger daughter, and asserted that he would put an end to her life once and for all. At one point, defendant managed to get an unobstructed shot at his wife, only narrowly missing her hip. In view of these acts, which evinced the depths to which the marital relationship had descended, it can hardly be said that a confidential relationship existed between the spouses at the

time of defendant's telephone call some nine days after the shooting, or that defendant was "relying upon any confidential relationship to preserve the secrecy of his acts and words" (*People v Dudley,* 24 NY2d 410, 415; *People v Patterson,* 39 NY2d 288, 304, *supra*). To hold otherwise distorts, in my view, the theory of "reliance upon the free and unrestrained privacy of the marital relation and the socially desirable confidence which exists, and should exist, between husband and wife" (*People v Daghita,* 299 NY 194, 199).