OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed.
Five months after separating from his wife and their two children, during which time she lived in a battered women’s shelter and told defendant that she no longer loved him, defendant learned that his wife had been seeing another man, Walter Cassella, and had taken a trip with Cassella and the children. Having read in his wife’s diary that Cassella was the *883 only man she ever loved, defendant confronted them both, punched and threatened to kill her, and shot and killed Cassella. Defendant surrendered to the police, then called his wife. When she asked in their telephone conversation why he had killed Cassella, defendant responded that it was because he loved her and wanted to prove his love to her. When she asked if he had nightmares about the killing, defendant responded that it didn’t bother him at all.[1] In defendant’s trial for the murder of Cassella, his wife testified for the People, and over objection related the substance of their telephone conversation. Defendant sought to establish a defense of extreme emotional disturbance, but was convicted, upon a jury verdict, of murder in the second degree and criminal possession of a weapon in the fourth degree. The Appellate Division reversed and ordered a new trial, concluding that admission of the contents of defendant’s telephone conversation with his wife -violated his marital privilege. One justice dissented, voting to reduce the conviction to manslaughter in the first degree because in his view defendant established that he had acted under the influence of extreme emotional disturbance. We now affirm.
One spouse may not, without consent, disclose a confidential communication made by the other during marriage (CPLR 4502 [b]; CPL 60.10). "Not protective of all communications, the privilege attaches only to those statements made in confidence and 'that are induced by the marital relation and prompted by the affection, confidence and loyalty engendered by such relationship.’ ” (Matter of Vanderbilt [Rosner—Hickey], 57 NY2d 66, 73.) Communication between spouses "is presumed to have been conducted under the mantle of confidentiality” (People v Fields, 38 AD2d 231, 233, affd on opn below 31 NY2d 713). This presumption is not rebutted by the fact that the parties are not living together at the time of the communication, or that their marriage has deteriorated, for even in a stormy separation disclosures to a spouse may be induced by absolute confidence in the marital relationship (see, People v Fields, supra; People v Dudley, 24 NY2d 410, 414; People v Oyola, 6 NY2d 259). Here, the circumstances of defendant’s call to his wife shortly after his surrender, coupled with the substance of his declarations to her, reveal that *884 his statements were prompted by the affection, confidence and loyalty engendered by the marital relationship, and that he "clung to the illusion that they could still reconcile” (People v Fediuk, 104 AD2d 1003, 1004).[2] The communications thus fall within the marital privilege. Nor can the error in admitting this testimony be considered harmless, for defendant’s absence of remorse was relied upon both by the People’s psychiatric expert in his evaluation of defendant’s mental state and by the prosecutor in his summation, which made specific reference to the wife’s testimony regarding the telephone conversation.
Defendant’s cross appeal must be dismissed because the order of the Appellate Division was not adverse to him (CPL 450.90 [1]), but we have considered his arguments in support of affirmance (CPL 470.35 [2] [b]), and we find them without merit. We note in particular that once defendant announced that he would introduce expert psychiatric testimony, although there was no specific statutory basis at that time (see, CPL 250.10 [3] subsequently enacted), the court in the circumstances acted within its discretion in granting the prosecution’s application to have defendant submit to a psychiatric examination. Further, the testimony of the People’s expert witness was not incredible as a matter of law, and given the conflicting testimony the defense of extreme emotional disturbance was not established as a matter of law.

. That defendant’s mother may have asked him the same question is irrelevant to the issue before us, for there is nothing in the record to indicate that defendant made any response, except when his spouse asked him that question during his call declaring his love for her.

. While the dissent would distinguish People v Fields (38 AD2d 231, 233, affd on opn below 31 NY2d 713) on its facts, the marital privilege was applied there in even more extreme circumstances: the husband had established residence with another woman and told his wife that his purpose in coming to see her — when the critical admissions were made — was to kill her. A test for privilege that would require a court to evaluate the actual viability of a marriage presents pragmatic difficulties, as noted in Fields, where we declined to adopt such a test. Here, for example, the dissent must speculate on its own (no such finding having been made below) as to whether defendant’s declarations of love to his wife in the telephone conversation, and at the time of and during their separation, as well as his continuing contacts with his family, were motivated by feeling for the children or the marriage.