■ The People of the State of New York, Respondent, v Marion Knapper, Appellant. [594 NYS2d 210] —Judgment, Supreme Court, Bronx County (Frank Diaz, J.), rendered November 28, 1990, convicting defendant, after jury trial, of manslaughter in the first degree, and sentencing him to a term of

8⅓ to 25 years, unanimously reversed, on the law, and the matter remanded for a new trial.

In this homicide trial the People offered proof that defendant, quite possibly in a jealous rage, had fatally stabbed an acquaintance of his estranged wife in the latter's presence. Called by the People as an eyewitness to the slaying, Mrs. Knapper testified not only with respect to the incident itself, but was also permitted, over the objection of defendant who asserted the marital privilege, to recount the contents of three separate telephone conversations which are the focus of this appeal.

Betty Knapper testified that when she spoke with defendant the night before the killing, he told her that if she did not come back to him, she was going to "get somebody killed." She recounted a second telephone conversation with defendant prior to her testifying before the grand jury, in which he stated that it was all her fault and that she should have come back to him. When she asked him how he could kill somebody in cold blood, he said, "I told you I was going to do it and I did it. You keep taking me for a joke and I proved to you I was going to [do] what I said I was going to do."

Mrs. Knapper described a third telephone conversation sometime later with her husband, during which she asked him why he had to kick the victim in the head after stabbing him. Defendant allegedly said, "I wasn't kicking him. He was laying there, he was trying to beg me to help him and I put my foot on his neck so he bleed faster to put him out of his misery."

Contrary to the People's arguments that the admitted testimony constituted "threats" and therefore was outside the marital privilege, or was harmless error, Mrs. Knapper's testimony regarding defendant's alleged inculpatory statements was erroneously admitted because the statements clearly constituted privileged marital communications induced by the marital relationship (People v Fediuk, 66 NY2d 881). The admission of this testimony cannot be deemed harmless error, because the alleged statements were *not* merely duplicative of the statements made by defendant to the police. (Defendant never actually told the police that he had stabbed anybody; he merely pointed out where "it" had happened and said he had discarded a knife and a shirt.) Rather, the alleged statements constituted detailed confessions of an intent to murder, and supplied motive (see, People v Schaeffer, 56 NY2d 448). That the jury acquitted defendant of murder in the

second degree and convicted him of manslaughter in the first degree does not rebut the severe prejudice stemming from the erroneous admission of the testimony, totally undermining defendant's alternative closing argument to the jury that, at most, only reckless conduct was involved, warranting a verdict of manslaughter in the second degree.

We also note that the trial court reversed its position a day after this challenged testimony and instructed the jury to disregard it. Although each member of the jury agreed to follow this instruction, we are not satisfied that such assurances, in light of the inflammatory content of these conversations, could be sufficiently erased as to guarantee defendant a fair trial.

In view of the foregoing, we do not reach the issues raised by defendant's conflicts with assigned counsel. Concur—Sullivan, J. P., Carro, Wallach, Asch and Rubin, JJ.