*546 OPINION OF THE COURT
Alexander W. Hunter, Jr., J.
The application by defendant to preclude the People from introducing into evidence two letters he wrote to his wife is denied.
Defendant is charged with one count of course of sexual conduct against a child in the second degree, two counts of sexual abuse in the first degree, two counts of sexual abuse in the second degree, and one count of endangering the welfare of a child. Defendant stands accused of inappropriately touching his stepdaughter, who was 10 years of age at the time.
While incarcerated at Rikers Island, defendant wrote two lengthy letters to his wife. The first letter was written in October 2010, approximately one month after he was incarcerated. The second letter was written in December 2010. Both letters contain references to infidelity, alcohol and substance abuse, and the instant case. Immediately upon receipt, his wife turned over the letters to the prosecutor.
At a hearing prior to the start of trial, the People seek to introduce certain portions of the letters referencing the instant case as admissions. The People seek to introduce the following excerpt from the first letter:
“As far as [the complainant], I would never purposely hurt her .... I’m getting three different stories and all three I deny. One from the cops, one from the lawyers, and one from ACS. I love you and I love the girls more than you obviously know. I can’t even imagine doing that [expletive] on dope nevertheless alcohol, but if I did [sic] tell your young cub I’m sorry I didn’t mean it and I’m sick and I need help. I don’t go after kids. I am not a pedophile.”
The People seek to introduce the following excerpt from the second letter:
“Find the strength to overcome this. I will do anything and everything to help [the complainant] .... And you as well [to] find joy to extinguish the pain in our hearts. This is our family, our unit, and I am the head of. With a loving wife by my side who is strong, smart and servant to the most high and who knows through him all is possible. Daddy is sick and I needed help. We will help daddy get better as a family. Let’s help daddy .... I am in love *547 with you and I am asking you to forgive me and to sacrifice yourself. I know it’s a lot to ask but I wouldn’t if I couldn’t fulfill. I’ve expressed my sorrow and offer my apology and my acknowledgment that I caused our family pain. And I will do everything in my power to ease it. I ask for another chance. The rest is up to you. Come back to me my darling wife and friend.”
Defendant asserts that these two portions should be deemed inadmissible as they do not fall within any exception to the hearsay rule and are protected by the marital privilege. Defendant argues that the statements contained in the letters constitute confidential communication between a husband and wife and therefore should not be introduced at trial.
In opposition, the People first note that these letters were written while defendant was incarcerated. Inmates are well aware of the fact that none of their communications are private. As such, the People argue that defendant did not have a reasonable expectation to believe that his wife would be the only person to read these letters. Second, the People assert that these statements constitute admissions. And third, the marital relationship that existed between defendant and his wife should not be used to shield defendant from his admissions.
In reply, defendant maintains that these statements simply do not constitute admissions. Defendant argues that the court should focus on whether these statements demonstrate an unequivocal statement that is contradictory to the position he is trying to advance. Defendant refers to the second letter where he expresses sorrow and apologizes to his wife as ambiguous. Based on the fact that the letter contains references to his infidelity and alcoholism, defendant could have been apologizing for a number of reasons wholly unrelated to the instant case. In addition, the first letter contains an explicit denial by defendant of any wrongdoing related to the instant case. Introduction of these statements would not only invite the jury to speculate but also could only serve to confuse the jury.
“An admission is a statement of a party made prior to trial which is inconsistent with the position the party is attempting to establish in the case. Admissions are exceptions to the rule against hearsay and may be introduced against the declarant at trial.” (People v Ballinger, 176 Misc 2d 803, 805 [Sup Ct, Kings County 1998].) Statements that unequivocally raise an inference of guilt may be introduced at trial as admissions. (Id.) *548 There are also situations where statements are not a direct and unequivocal admission of guilt yet a proper inference of guilt may be drawn from them. (Id.) Additionally, a statement of apology that does not specifically refer to the commission of a crime can be introduced at trial as an admission. (See People v Dixon, 199 AD2d 332 [2d Dept 1993].) However, statements too vague to presume an inference of guilt will be excluded. (Ballinger, 176 Misc 2d at 806.)
This court finds that portions of the letters are admissions and, thus, an exception to the hearsay rule. The statements made by defendant, especially where he references the complainant, permit a reasonable inference of guilt to be drawn therefrom.
At the same time, however, the information contained in the letters is privileged. “A husband or wife shall not be required, or, without consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage.” (CPLR 4502 [b]; see CPL 60.10.) Not all communications between a husband and wife are protected. The marital privilege only applies to those statements made in confidence and “that are induced by the marital relation and prompted by the affection, confidence and loyalty engendered by such relationship.” (Poppe v Poppe, 3 NY2d 312, 315 [1957]; see also Parkhurst v Berdell, 110 NY 386, 393 [1888].) The term communication encompasses oral communications and conversations between husband and wife, as well as, “knowledge derived from the observance of disclosive acts done in the presence or view of one spouse by the other because of the confidence existing between them by reason of the marital relation and which would not have been performed except for the confidence so existing.” (People v Daghita, 299 NY 194, 199 [1949].) Letters between spouses fall within the protection of this rule. (See Hopkins v Grimshaw, 165 US 342 [1897]; People v Harris, 39 Misc 2d 193 [Sup Ct, Bronx County 1963].)
“Communication between spouses ‘is presumed to have been conducted under the mantle of confidentiality.’ ” (People v Fediuk, 66 NY2d 881, 883 [1985], quoting People v Fields, 38 AD2d 231, 233 [1st Dept 1972].) “This presumption is not rebutted by the fact that the parties are not living together at the time of the communication, or that their marriage has deteriorated, for even in a stormy separation disclosures to a spouse may be induced by absolute confidence in the marital relationship.” (Id. at 883.)
*549 So considered, the letters at issue herein are the form of communication to which the marital privilege applies. It is evident by the sensitive nature of the statements and the language employed by defendant that he would not have made such statements but for the relationship shared between he and his wife. Nonetheless, where the criminal activity was aimed at a child of the marriage, the privilege is extinguished. (See People v Davis, 226 AD2d 125, 126 [1st Dept 1996], lv denied 88 NY2d 1020 [1996]; People v Allman, 41 AD2d 325 [2d Dept 1973]; People v Govan, 268 AD2d 689 [3d Dept 2000].) Therefore, the letters are admitted.
Accordingly, the application by defendant to preclude the introduction of two letters written by him to his wife, is denied.