JUSTICE RICE
specially concurring.
¶32 I concur with the holding of the Court on all issues but must disagree with the analysis employed by the Court under Issue Two.
¶33 The Court concludes in ¶ 26 that because Baldwin and Karin were married at the time of trial, Karin’s testimony in regard to a statement made prior to the solemnization of their marriage was inadmissible under the spousal privilege statute. However, this is an incorrect conclusion under Montana law. The spousal privilege does not bar admission of a statement made between two persons who were not married at the time the statement was made.
¶34 Noting the “confusing state of spousal privilege law,” this Court conducted an extensive review of the law in an effort to clarify the privilege in State v. Nettleton (1988), 233 Mont. 308, 313, 760 P.2d 733, 737. From its survey of decisions in other states, the Court took guidance, among other sources, from People v. D'Amato (N.Y. Sup.Ct. 1980), 105 Misc. 2d 1048, 430 N.Y.S.2d 521, 522, which held that:
The statutory privilege covers only those private exchanges which “would not have been made but for the absolute confidence in, and induced by, the marital relationship.” [Citation omitted.]
See Nettleton, 233 Mont. at 316, 760 P.2d at 738.
¶35 Based thereon, the Court ruled that a “full and workable definition of the threshold for communications between spouses deemed privileged would thus require two elements,” as follows:
First, the communications must be utterances and other expressions intended to convey a message from one spouse to another. Second, the message must be intended by the communicating spouse to be confidential in that it was conveyed in reliance on the confidence of the marital relationship.
Nettleton, 233 Mont. at 317, 760 P.2d at 739.
¶36 Karin’s testimony was not made inadmissible by virtue of the fact that she and Baldwin were married at the time of trial. To the contrary, the inquiry centers on their status at the time the contested *498 statement was made. If they were not married at that time, then the statement could not “convey a message from one spouse to the other” and could not have been “conveyed in reliance on the confidence of the marital relationship.” Nettleton, 233 Mont. at 317, 760 P.2d at 739 (emphasis added). Because the solemnization of the marriage had not occurred at the time the statement was made, Karin’s testimony about the statement was not barred thereby.
¶37 The issue then shifts to the validity of Baldwin’s claim that a common law marriage existed between he and Karin at the time the statement was made. At trial, the common law marriage issue rose as an evidentiary objection during Karin’s testimony, at which time the jury was excused and the parties offered very brief testimony to the District Court concerning Baldwin and Karin’s relationship. The direct and cross-examination produced testimony that Baldwin and Karin had not shared finances or income tax returns during their relationship, had been separated for a year prior to the solemnization, that Baldwin had an intervening relationship with another woman, and that the parties decided to marry by solemnization because, according to Karin, “I wanted to get married. We’ve been wanting to get married a long time.” Given the brief testimony offered in regard to this issue, I would conclude that the District Court’s evidentiary ruling that no common law marriage existed was founded upon substantial evidence, and therefore, Karin’s testimony concerning the statement was not barred by the spousal privilege.
¶38 I concur in affirming the District Court.
CHIEF JUSTICE GRAY and JUSTICE LEAPHART join in the concurring opinion of JUSTICE RICE.